**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jose Guadalupe ARCE–HERNANDEZ, Defendant–Appellant.**

**No. 97–50377.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1998.

Withdrawn from Submission March 23, 1998.

Resubmitted Oct. 21, 1998.

Decided Dec. 9, 1998.

As Amended on Denial of Rehearing and Rehearing En Banc March 11, 1999.*

---

* Judge Schroeder has voted to deny the petition for rehearing en banc, and Judges Lay and Good- win recommended denial.

**560**

Richard M. Barnett, San Diego, California, for the defendant-appellant.

Lawrence E. Spong, Renee Palermo, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: LAY,** GOODWIN, and SCHROEDER, Circuit Judges.

** Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designation.

GOODWIN, Circuit Judge:

Jose Arce–Hernandez was convicted in 1995 and served part of his two year sentence for the felony of carrying a loaded firearm. In 1996, he was deported to Mexico. Four days later, he was found in San Diego and indicted for being a deported alien found in the United States in violation of 8 U.S.C. § 1326(b)(1). He entered a conditional guilty plea, and now appeals the judgment of conviction by collaterally attacking the validity of his underlying deportation hearing. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I. BACKGROUND

In 1988, Arce–Hernandez entered the United States without documentation. In 1991, he married Cecilia Juarez, a United States citizen. The couple has two children, both citizens.

On September 10, 1996, the Department of Justice delivered Arce–Hernandez to the Immigration and Naturalization Service for repatriation. He made his first appearance, at a bond hearing, before an Immigration Judge ("IJ") on an Order to Show Cause. Arce–Hernandez informed the court that he would be seeking relief from deportation pursuant to § 245 of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1255(a). However, the IJ determined that Arce–Hernandez was not eligible for adjustment of status under § 245 because he did not have a visa immediately available to him. Two days later, his wife filed an I–130 Immigration Petition for Relative, seeking to adjust her husband's status.

The deportation hearing was continued a number of times to permit Arce–Hernandez to retain counsel. He was unable to do so. The deportation hearing was then held on September 25, 1996, where Arce–Hernandez appeared before the IJ as part of a group. The IJ asked Arce–Hernandez a number of questions and, based on his answers, ordered him deported to Mexico pursuant to § 241(a)(1)(B) of the INA, 8 U.S.C. § 1227(a)(1)(B), for entering the United States without inspection.

As noted, four days after Arce–Hernandez was deported, he was apprehended in San Diego and indicted. He filed a Motion to Dismiss the Indictment, challenging the procedural adequacy of his original deportation hearing. The motion was denied, whereupon Arce–Hernandez entered his conditional plea to preserve review of the denial of his motion to dismiss the indictment. He was sentenced to twenty-one months in federal prison, and now appeals both the denial of his motion to dismiss and his conviction.

## II. JURISDICTION

At the outset, we must determine whether recent changes in immigration law deprive us of jurisdiction to hear this appeal. We conclude that they do not.

On September 30, 1996, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Div. C of Pub.L. No. 104–208, 110 Stat. 3009 (1996), was enacted. The IIRIRA contains provisions which deprive this court of the ability to review deportation orders under certain circumstances. However, we need not decide whether the prior conviction brings Arce–Hernandez under that law. The IIRIRA does not apply to this case because the IJ heard and decided Arce–Hernandez's immigration status and ordered him removed on September 25, 1996, five days before the IIRIRA was enacted. *See Valderrama–Fonseca v. INS*, 116 F.3d 853, 854–855 (9th Cir.1997) ("the aggravated felony amendments of IIRIRA § 321(a) apply only to actions taken after IIRIRA's date of enactment (September 30, 1996), IIRIRA § 321(c), and all 'actions taken' in this matter—except for this court's, which we conclude do not count—occurred before that date").

However, the issue of whether provisions in the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, 1276–77 (1996), operate to preclude judicial review of an allegedly defective deportation proceeding remains to be resolved. The AEDPA was enacted in April 1996 and was in effect at the time of

Arce–Hernandez's deportation hearing. The government concedes that, according to the provisions in effect at that time, Arce–Hernandez's criminal record did not classify him as an aggravated felon under the AEDPA. *See* AEDPA § 440(e), codified at 8 U.S.C. § 1101(a)(43).

■ The government argues instead that AEDPA provisions regarding firearms offenses prevent us from exercising jurisdiction in this case. Section 440(a) of the AEDPA amendments provided in relevant part that: "any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in [INA] section 241(a)(2) ... (C) ... shall not be subject to review by any court." *See* 8 U.S.C. § 1105a(a)(10) (1996). Arce–Hernandez conceded at his deportation hearing that he was deportable under § 241(a)(2)(C) of the INA, 8 U.S.C. § 1227(a)(2)(C), for having been convicted of being a felon in possession of a firearm. The order at issue here, however, is a criminal conviction grounded on his deportation and subsequent illegal entry. This appeal does not seek review of a final order of deportation. Instead, it seeks to attack collaterally his conviction for being found in the United States after being deported on the ground that his deportation was illegal. The applicability of § 440(a) to such a collateral attack appears to be an issue of first impression, at least in this circuit.[1]

The government's reliance on *Duldulao v. INS*, 90 F.3d 396 (9th Cir.1996) is misplaced. *Duldulao* involved a direct appeal to this court of the merits of a denial of adjustment of status. We held that under the AEDPA we lacked jurisdiction to entertain the appeal based on the alien's previous conviction for firearms offenses. *Duldulao* did not involve a claim that the deportation hearing was constitutionally defective.

By its language, § 440(a) applies only to reviews of final orders of deportation. The statute is silent regarding its application to review of criminal convictions which happen to rest upon deportation orders. Congressional intent could be divined in either direction. In *Chow v. INS*, 113 F.3d 659 (7th Cir.1997), the petitioner argued that, by its language, § 440(a) did not apply to strip the court of jurisdiction to review a BIA order denying a motion to reconsider or reopen deportation proceedings, inasmuch as such an order was not a "final order of deportation." *Id.* at 663. The court found otherwise.[2] *Id.* at 664. However, the court also found that "the wording of section 440(a), when compared to the wording employed in other sections of the AEDPA, does not evidence Congressional intent to preclude all forms of judicial relief." *Id.* at 668.

The Seventh Circuit noted that, while § 440(a) states that final orders of deportation "shall not be subject to review by any court," elsewhere in the Act "Congress has used more definite language to express its intent to preclude all forms of judicial review and relief." *Id.* As an example, the court cited the far stronger language of § 423(a), which reads: "no court shall have jurisdiction to review any individual determination, *or to entertain any other cause or claim*, arising from *or relating to* the implementation or operation of section 235(b)(1) [of the INA]." (Emphasis added.) As a result, the court concluded, "[b]ecause section 440(a) does not include this type of sweeping prohibition on judicial review of deportation orders, we will not read section 440(a) as foreclosing all avenues of judicial review."[3] *Id.* at 669.

In a case decided a few months later, the Seventh Circuit restated its holding in *Chow* thusly: "[s]ignificantly, ... we ... held that the broad language of § 440(a) is not so

**1.** Although *United States v. Zarate–Martinez*, 133 F.3d 1194 (9th Cir.1998), involved a similar collateral attack on the constitutionality of a deportation which provided the basis for an illegal reentry conviction, the jurisdictional issue appears not to have been raised, either by the government or by the court.

**2.** *Chow* was cited extensively and with approval by this circuit in *Sarmadi v. INS*, 121 F.3d 1319,

1321–1322 (9th Cir.1997), when faced with the same issue.

**3.** The court also noted that "the INS has conceded that section 440(a) has not eliminated all forms of judicial review available to aliens," citing *Kolster v. INS*, 101 F.3d 785, 790 (1st Cir. 1996). *Chow*, 113 F.3d at 668.

broad as to preclude judicial review of claims *brought pursuant to other statutes.*" *Turkhan v. INS,* 123 F.3d 487, 490 (7th Cir.1997) (emphasis added). *See also Goncalves v. Reno,* 144 F.3d 110, 121–22 (1st Cir.1998) ("IIRIRA and AEDPA make specific reference when they amend or repeal statutes granting jurisdiction to the federal courts.... This ... leads us to apply the long standing rule disfavoring repeal of jurisdictional provisions by implication ...").

The reasoning in *Chow* is applicable to the collateral review that Arce–Hernandez seeks. If Congress intended § 440(a) to bar collateral review in connection with an appeal of a criminal conviction for violating 8 U.S.C. § 1326 (illegal reentry), it could have done so by using language like that in § 423(a), cited above. It did not do so. Thus, we conclude that § 440(a) does not deprive us of jurisdiction to consider Arce–Hernandez's collateral attack on the underlying deportation order.

### III. WAS THE DEFECT PREJUDICIAL?

The government now concedes that Arce–Hernandez's deportation hearing was tainted by a procedural defect, inasmuch as the IJ failed to advise him of his possible eligibility for relief from deportation, as then required by 8 C.F.R. § 242.17(a).[4] This provision is mandatory. *See Moran–Enriquez v. INS,* 884 F.2d 420, 422 (9th Cir.1989) (holding that there is a due process right to be informed if one appears to be eligible for relief from deportation under INA §§ 212(h) and 245, 8 U.S.C. §§ 1182(h) and 1255(a)).

Under § 245, Arce–Hernandez could have sought an adjustment of his immigration status if he applied for the adjustment, obtained a waiver of excludability, and had an immediately available visa. *See* 8 U.S.C. § 1255(a).

■ Notwithstanding the procedural defect in Arce–Hernandez's deportation hearing (failure to tell him of rights under § 245), he must still show prejudice as a result of that defect in order to preclude the govern-

ment's use of the deportation order as the basis for this criminal proceeding. *See United States v. Proa–Tovar,* 975 F.2d 592, 595 (9th Cir.1992) (en banc).

■ Arce–Hernandez can demonstrate prejudice in this case only by showing that he had plausible grounds for relief from deportation. An alien who has been convicted of a specified crime may be eligible for relief from deportation only if he also meets the requirements of § 212(h), which provides, under limited circumstances, for waiver of excludability. Under § 212(h), a waiver of excludability will be granted where: (1) the alien is the spouse, parent or child of a citizen or lawful permanent resident; (2) the exclusion would result in extreme hardship to the citizen or lawfully resident relative; (3) the alien's admission would not be contrary to the national welfare, safety or security of the United States; and (4) the Attorney General exercises her discretion in the alien's favor. 8 U.S.C. § 1182(h). *See Bui v. INS,* 76 F.3d 268, 270–271 (9th Cir.1996); *Moran–Enriquez,* 884 F.2d at 422. An alien does not have to prove that he actually would have been granted such relief. *See United States v. Jimenez–Marmolejo,* 104 F.3d 1083, 1086 (1996). But he must make a "plausible" showing that the facts presented would cause the Attorney General to exercise discretion in his favor.

The district court held that Arce–Hernandez lacked plausible grounds for relief from deportation at the time of his deportation hearing in September 1996. The court noted that even if a visa had been immediately available to Arce–Hernandez, which was not the case, he could not plausibly claim that his repatriation would result in extreme hardship to his U.S. citizen wife and children. Once Arce–Hernandez was returned to Mexico, the country from which he had illegally entered the United States, the choices facing the family were admittedly bleak. His wife, who was in ill health, and children could accompany the alien to Mexico where eco-

**4.** 8 C.F.R. § 242.17(a) provided, in relevant part, that an Immigration Judge must "inform the respondent [in a deportation hearing] of his apparent eligibility to apply for any of the benefits [of relief from deportation] enumerated in this paragraph and ... afford him an opportunity to make application therefor during the hearing." The current analogous provision is at 8 C.F.R. § 240.11(a)(2) (1998).

nomic hardship would await them, or they could remain in their present location where economic hardship would await them.

 The material question is whether the hardship caused by deportation would constitute *extreme* hardship as required by § 212(h). *Shooshtary v. INS,* 39 F.3d 1049 (9th Cir.1994) provides the appropriate guidance.[5] Under *Shooshtary,* a § 212(h) waiver will be granted only when there is "great actual or prospective injury" or "extreme impact" on the citizen family member, beyond the "common results of deportation." *Id.* at 1051 (internal quotations omitted). The difficulties in having to move one's family elsewhere and anticipated difficulties in finding work have been held to constitute the common results of deportation. *See id.* at 1051. However, we must consider "all factors relevant to the hardship determination." *Sullivan v. INS,* 772 F.2d 609, 610 (9th Cir. 1985).

The allegation that the wife suffers from poor health and would have difficulty working in Mexico, if true, would constitute hardship to a wife and her children, but we cannot say, as a matter of law, that these hardships would be extreme and beyond the common results of the deportation of a convict. Indeed, Arce–Hernandez describes the typical case of hardship that follows deportation of an alien whose citizen wife and children were all acquired after his illegal entry into the United States. *See, e.g., INS v. Wang,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981) (per curiam).

We cannot say that the trial court committed error in finding that Arce–Hernandez failed to tender a plausible case that he is eligible for a waiver under § 212(h). Accordingly, there was no prejudice in failing to tell him at the deportation hearing what he had indicated at the show cause hearing he already knew, that he could apply for a waiver under § 245. Such an application would have had to surmount a number of difficulties which the evidence in this case showed would be virtually impossible to overcome.

AFFIRMED

5. The fact that *Shooshtary* involved a situation where the immigrant was required to prove the existence of grounds for relief from deportation does not preclude its use in a case such as this, where the defendant need only show plausible grounds for such relief.

