UNITED STATES of America,
Plaintiff–Appellee–Cross–
Appellant,

v.

Juan Mario ARRIETA, Defendant–
Appellant–Cross–Appellee.

Nos. 99–50368, 99–50422.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 2000

Filed Sept. 25, 2000

Elizabeth A. Newman and Amy Fan Saint Martin, Deputy Federal Public Defenders, Office of the Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Jean Rosenbluth, Assistant United States Attorney, United States Attorney's Office, Los Angeles, California, for the plaintiff-appellee.

Before: FERGUSON, BOOCHEVER, and REINHARDT, Circuit Judges.

FERGUSON, Circuit Judge:

Defendant Juan Mario Arrieta appeals his conviction for reentering the United States after being deported, in violation of 8 U.S.C. § 1326. Mr. Arrieta claims that the district court erred when it denied his motion to dismiss the indictment because his underlying deportation was invalid. We have jurisdiction pursuant to 28 U.S.C. § 1291 and REVERSE.

## I. *BACKGROUND*

Mr. Arrieta first entered the United States in 1986 when his mother brought him here at the age of nine. Ten years later, in 1996, Mr. Arrieta was convicted in California of attempted forcible rape and sentenced to serve one year in a county jail. Upon his release, the Immigration and Naturalization Service ("INS") instituted deportation proceedings against Mr. Arrieta. In May 1997, Mr. Arrieta and 13 other aliens appeared before an immigration judge ("IJ") for a group deportation hearing. During the hearing, the IJ informed the group that they had the right to "present evidence," "call witnesses," and "show me documents." In addition, he told the group that if they disagreed with his decision, they could "appeal the case to a higher court." The IJ also informed the group that if they did not appeal their case, then the decision was final. When the IJ asked if they understood these rights, they collectively answered "Yes."

Subsequently, the IJ addressed Mr. Arrieta individually and asked him whether he understood the rights he had explained to the group. Mr. Arrieta answered that he did. Mr. Arrieta then admitted that (1) he was not a citizen of the United States; (2) he was convicted in California of a serious offense; and (3) he had entered the United States illegally. Based on these facts, the IJ ordered that Mr. Arrieta be deported. The IJ then asked Mr. Arrieta whether he accepted his decision or whether he wanted to appeal the decision. Mr. Arrieta responded that he accepted his decision. Accordingly, the IJ stated that his order was final, and Mr. Arrieta was deported.

In October 1998, Mr. Arrieta was arrested and charged with reentering the United States following deportation in violation of 8 U.S.C. § 1326. Prior to pleading guilty, Mr. Arrieta filed a motion to dismiss the indictment based on his belief that the underlying deportation proceeding violated his right to due process. The district

court disagreed and denied the motion. Mr. Arrieta filed a timely notice of appeal.

## II. DISCUSSION

██ "In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." *United States v. Zarate–Martinez*, 133 F.3d 1194, 1197 (9th Cir.1998) *cert. denied,* 525 U.S. 849, 119 S.Ct. 123, 142 L.Ed.2d 99 (1998). If the defendant's deportation proceedings fail to provide this opportunity, the validity of the deportation may be collaterally attacked in the criminal proceeding. *Id.* The defendant "can succeed in this collateral challenge only if he is able to demonstrate that: (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Id.*

### A. Due Process Violation

██ In a criminal proceeding, an alien cannot collaterally attack an underlying deportation order if he validly waived the right to appeal that order. *See United States v. Estrada–Torres*, 179 F.3d 776, 780–81 (9th Cir.1999). In order for the waiver to be valid, however, it must be both "considered and intelligent." *Id.; See United States v. Mendoza–Lopez*, 481 U.S. 828, 840, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987).

██ In this case, Mr. Arrieta argues persuasively that he could not make a considered and intelligent decision about his right to appeal because the IJ never informed him of his eligibility for a § 212(h) waiver. *See* 8 U.S.C. § 1182(h). We have stated that where the record contains an inference that the petitioner is eligible for relief from deportation, "the IJ must advise the alien of this possibility and give him the opportunity to develop the issue." *Moran–Enriquez v. INS*, 884 F.2d 420, 422–23 (9th Cir.1989). Indeed, we have found this requirement to be "mandatory." *United States v. Arce–Hernandez*, 163 F.3d 559, 563 (9th Cir.1998). In *Arce–*

*Hernandez,* the IJ erred by failing to advise the alien of his right to apply for relief from deportation. *See id.* at 563. In that case, we recognized that the defect was a due process violation that deprived the alien of judicial review, presumably because an alien who is not made aware that he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right. *See id.* In this case, Mr. Arrieta was deprived of exactly the same opportunity as Mr. Arce–Hernandez, and thus was denied due process and a meaningful opportunity for judicial review.

Here, the IJ should have known that Mr. Arrieta was eligible to apply for a § 212(h) waiver since the record establishes that his mother is a lawful permanent resident and that his daughter is a citizen. The IJ, however, never mentioned the § 212(h) waiver or any other possible mechanism to obtain relief from deportation. Without this information, Mr. Arrieta, who was not represented by counsel, could not make a considered and intelligent decision about whether to apply for a § 212(h) waiver, and could not make a considered and intelligent decision about whether to appeal the IJ's deportation order. Based on this defect in the underlying deportation proceedings, we find that Mr. Arrieta's waiver of the right to appeal was invalid.

### B. Prejudice

██ The next issue is whether Mr. Arrieta was prejudiced by the defect in the deportation proceeding. In order to establish prejudice, Mr. Arrieta does not have to show that he actually would have been granted relief. Instead, he must only show that he had a "plausible" ground for relief from deportation. *Arce–Hernandez,* 163 F.3d at 563; *United States v. Jimenez–Marmolejo,* 104 F.3d 1083, 1086 (9th Cir.1996).

Mr. Arrieta argues that, based on his family situation, he might have been granted a § 212(h) waiver. In order to obtain a

§ 212(h) waiver, the alien must demonstrate that his deportation would cause "extreme hardship" to a "spouse, parent or child" who is a citizen or lawful permanent resident. 8 U.S.C. § 1182(h). The government contends that Mr. Arrieta cannot demonstrate that he was eligible for a waiver. It asserts that he did not have a plausible basis for § 212(h) relief, because the conviction underlying his deportation was an aggravated felony and because, as a matter of law, he did not show that his deportation would be an "extreme hardship" for his family. We reject both of the government's contentions, and agree with Mr. Arrieta that he "plausibly" could have received a § 212(h) waiver.

■ The government, citing 8 U.S.C. § 1228, contends that aliens who have been convicted of aggravated felonies are not eligible for § 212(h) relief. The bar to discretionary relief under § 1228, however, applies only to aliens "described in this section." § 1228(b)(5). Section 1228, titled "Expedited Removal of Aliens Convicted of Committing Aggravated Felonies," has four subsections, and it is not clear from the text of § 1228 which aliens are the aliens "described in this section." For example, § 1228(a) concerns aliens in "special [expedited] removal proceedings at certain ... correctional facilities." Mr. Arrieta's deportation proceeding did not take place under these special procedures. Subsection (b)(2) concerns aliens not lawfully admitted to the United States, and subsection (b)(1) sets up expedited administrative removal procedures for such aliens. § 1228(b). While Mr. Arrieta was not lawfully admitted, he was not removed under the special § 1228(b)(1) procedures. The first subsection (c)[1] creates a presumption that aliens convicted of aggravated felonies are deportable, and it does not purport to limit the scope of its reach. On its face, the text of § 1228(b)(5) could conceivably refer to all aggravated felons, or it could be read, more in accord with its

apparent intent, to refer only to aggravated felons who are processed through expedited removal processes. For the reasons explained below, we conclude that it means the latter.

While the text of § 1228, standing alone, does not define clearly the scope of the limitation on discretionary relief contained in § 1228(b)(5), its meaning becomes clear when we view the section as only one part of a larger statute. See Kokoszka v. Belford, 417 U.S. 642, 650, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974) (looking to the whole act to determine the meaning of a specific provision). The discretionary relief at issue in this case, a § 212(h) waiver, contains its own limitation with regard to aggravated felons. It prohibits an alien convicted of an aggravated felony who has "previously been admitted to the United States as an alien lawfully admitted for permanent residence" from receiving relief. § 212(h). Based on a plain reading of this prohibition, the Board of Immigration Appeals has held that the § 212(h) limitation applies only to lawful permanent residents, and not to other aliens convicted of aggravated felonies. See In re Michel, Interim Decision 3335 (BIA 1998) (alien convicted of aggravated felony eligible to apply for § 212(h) waiver because he is not a lawful permanent resident).[2] If § 1228(b)(5) were interpreted to apply broadly to all aggravated felons, it would render the § 212(h) limitation to aliens "previously ... admitted to the United States as an alien lawfully admitted for permanent residence" meaningless. We will not interpret the statute to produce this result. See NLRB v. Health Care and Retirement Corp. of America, 511 U.S. 571, 578–80, 114 S.Ct. 1778, 128 L.Ed.2d 586 (1994). On the other hand, if we read § 1228 as merely applying to aliens who are processed in special expedited proceedings, the section would not repeal the § 212(h) limitation by implication, but

---

**1.** Congress enacted two subsections in § 1228 that it labeled "subsection (c)."

**2.** Under the BIA ruling, the § 212(h) limitation does not apply to Mr. Arrieta, who was never a lawful permanent resident.

would simply supplement it in a specific respect. That is, thus, the interpretation we are required to adopt. *See Lujan–Armendariz v. INS*, 222 F.3d 728, 743–44 (2000).

The structure of the Immigration and Nationality Act, and the placement of § 1228(b)(5) within it, provides further support for the conclusion that it reaches only aliens subject to expedited removal. As noted above, § 1228 establishes expedited removal procedures, while § 1229 and § 1229a provide the general procedures for removal proceedings. It would not make sense to put a general limitation on relief for aggravated felons in the section dealing with special expedited procedures if the limitation were to apply broadly to aliens in both expedited and regular proceedings. The interpretation of § 1228(b)(5) that can be reconciled with the structure of the act is that the section prohibits discretionary relief in expedited removal proceedings, and that the availability of discretionary relief for aliens in other removal proceedings is governed by the specific limitations on such relief contained in the substantive provisions of the act that make that relief available. *See e.g.* 8 U.S.C. § 1182(h) (providing for extreme hardship waivers from deportation and establishing limits on its availability for aggravated felons); 8 U.S.C. § 1158(b)(2) (providing for asylum and establishing limits on its availability to aggravated felons); 8 U.S.C. § 1229b(a)(3) (providing for cancellation of removal and establishing limits on its availability for aggravated felons).

The government does not argue that the limitation in § 212(h) on allowing § 212(h) relief to certain aggravated felons applies to Mr. Arrieta. As we explained above, because that limitation only applies to aliens admitted as lawful permanent residents and Mr. Arrieta has never been admitted to that status, the limitation clearly does not apply to him. Ignoring the specificity of the limitation on § 212(h) relief contained within the section itself, the government instead relies on the section that pertains to expedited removals,

even though Mr. Arrieta's removal was governed by a different section that is applicable to removals pursuant to the agency's regular procedure. The government's argument simply cannot be reconciled with the structure of the statute; moreover, it would render § 212(h)'s limitation on relief meaningless.

Our interpretation of § 1228(b)(5) is consistent with BIA precedent. *See In re Michel, supra.* Furthermore, no court of appeals has ever held that § 1228(b)(5) bars § 212(h) relief for aliens convicted of aggravated felonies when the alien is not ordered deported through the special expedited procedures established in § 1228, and we see no reason to do so now. We conclude that § 1228(b)(5) does not apply to Mr. Arrieta, because he was not ordered removed through the § 1228 expedited procedures.

■ We also reject the government's argument concerning the definition of "extreme hardship." The government cites several cases to support its proposition that Mr. Arrieta's family would not have been able to make the showing necessary to meet that requirement. *See United States v. Arce–Hernandez*, 163 F.3d 559 (9th Cir.1998); *Shooshtary v. INS*, 39 F.3d 1049 (9th Cir.1994); *Hassan v. INS*, 927 F.2d 465 (9th Cir.1991). *Shooshtary* and *Hassan* are too dissimilar from this case to provide useful guidance. In *Shooshtary*, the alien presented virtually no concrete evidence of hardship. He simply asserted that his wife could not support the family and that he would have difficulty finding employment in Britain. *Shooshtary*, 39 F.3d at 1051. In *Hassan*, the alien could not substantiate his claim of financial hardship because he was never authorized to work in the United States, and his wife and father had supported the family in the past. *Hassan*, 927 F.2d at 468.

*Arce–Hernandez*, however, provides more support for the government's position. In that case, the defendant attempted to collaterally challenge his illegal reentry conviction on the ground that he had

not been informed about relief under § 212(h). The panel found a due process violation, but concluded that Arce–Hernandez did not show prejudice because he did not show extreme hardship. In *Arce–Hernandez,* we explained that because Arce–Hernandez's wife was in poor health, the family faced the option of moving to Mexico and suffering economic hardship or remaining in the United States and suffering economic hardship. *Id.* at 563–64. We concluded that the difficulties we identified, economic hardship and the difficulty of relocating, are typical when one spouse is deported, and therefore Arce–Hernandez's family had not, as a matter of law, demonstrated that they would suffer extreme hardship from his deportation. *Id.* at 564.

The hardships at issue in *Arce–Hernandez,* then, were the economic hardship posed by the bread-winner's deportation, and the problems related to the family's moving. Nothing in *Arce–Hernandez* indicates that there was any testimony concerning other severe harm that might befall the family. In *Arce–Hernandez,* we had no occasion to consider, for example, the specific hardship caused by family separation. *Arce–Hernandez* simply stands for the proposition that economic hardship caused by the deportation of a family's primary bread-winner, combined with the difficulties of relocating, do not, standing alone, constitute the extreme hardship necessary to justify relief. Under that case, something more is required to remove the case from the "typical" hardship category.

■ The existence of family ties in the United States is the most important factor in determining hardship. *Gutierrez–Centeno v. INS,* 99 F.3d 1529, 1533 (9th Cir. 1996); *Contreras–Buenfil v. INS,* 712 F.2d 401, 403 (9th Cir.1983). As in *Arce–Hernandez,* the record in this case shows that Mr. Arrieta provides his family with significant financial support. But unlike in *Arce–Hernandez,* Mr. Arrieta provided evidence of extreme hardship to his family extending well beyond deprivation of such support. He provided an affidavit from his mother documenting the critical role Mr. Arrieta played in raising his younger siblings. Mr. Arrieta's mother was in very poor health, and she was raising two citizen children. His mother documented the essential assistance Mr. Arrieta provided in helping to raise those children, especially when she was medically unable to do so. She also documented the severe sense of personal loss she felt when Mr. Arrieta was deported. Mr. Arrieta was not a spouse, but a son and brother. It was evident from the record that the effect of the deportation order would be separation rather than relocation. The record also showed that Mr. Arrieta's hardship would cause serious non-economic hardships to the family, in addition to the "typical" financial hardship found in *Arce–Hernandez.*

Of particular importance is the evidence Mr. Arrieta produced of the effect that separation from him would have on his immediate family members, as to whom he provided essential emotional and other non-economic familial support. We have previously explained that "preservation of family unity" may be a central factor in an extreme hardship determination. *See Cerrillo–Perez v. INS,* 809 F.2d 1419, 1423 (9th Cir.1987). We based this determination not only on the United States' international human rights commitments, but on "[t]he importance and centrality of the family in American life [which] is firmly established both in our traditions and in our jurisprudence." *Id.* Unlike in *Arce–Hernandez,* where we explained that it was not clear whether the alien's family would accompany him back to Mexico, (and did not consider the issue of family separation or emotional and other non-economic familial support,) in this case Mr. Arrieta has documented that his deportation would deprive his family of various forms of non-economic familial support and that it would disrupt family unity.

In summary, although the evidence produced by Mr. Arrieta does not guarantee that he would have been granted a

§ 212(h) waiver, it provides the "something more" that makes it plausible that he would have received one. *See Jimenez–Marmolejo*, 104 F.3d at 1085 (finding a plausible ground for relief where the alien's entire family lived in the United States and the alien suffered from borderline retardation). Moreover, although our decision does not depend upon the expert testimony adduced, Mr. Arrieta did provide testimony from an expert witness, whose credibility the government does not now challenge, that there was "a reasonable possibility" that Mr. Arrieta would have been granted a waiver.[3] This testimony provides additional support for the proposition that it is "plausible" that Mr. Arrieta would have received a § 212(h) waiver. Because it is plausible that Mr. Arrieta would have received a waiver, we hold that he was prejudiced by the government's due process violation. *See id.* at 1086.

## III. *CONCLUSION*

In sum, we find that Mr. Arrieta's due process rights were violated when the IJ failed to inform him of his apparent eligibility for a § 212(h) waiver. Because there was a possibility that the IJ would have granted such a waiver, we also find that Mr. Arrieta was prejudiced by this violation. Given the prejudice, Mr. Arrieta's underlying deportation cannot be used as an element of his conviction under 8 U.S.C. § 1326, and therefore, his conviction must be reversed.[4]

REVERSED

---

3. The government also does not challenge the use of expert witness testimony on the issue whether it was plausible that a waiver would be granted. Rather, it argues that Mr. Arrieta's expert's testimony should be "discounted" because the expert was not aware that Mr. Arrieta was statutorily ineligible for a waiver based on the prior conviction. As we have explained, the government is incorrect that the statute prohibits an alien in Mr. Arrieta's circumstance from receiving relief un-

der § 212(h), and the expert's affidavit makes it clear that he was aware of the nature of Mr. Arrieta's prior conviction.

4. Because we are reversing the conviction, we need not reach the remaining sentencing issues raised by the parties.