**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JOSE LUIS HERNANDEZ-ARIAS,
*Defendant-Appellant*.

No. 12-50193

D.C. No.
3:11-cr-00368-BEN-1

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted
July 8, 2013—Pasadena, California

Filed March 21, 2014
Amended August 5, 2014

Before: Susan P. Graber, Johnnie B. Rawlinson,
and Paul J. Watford, Circuit Judges.

Order;
Opinion by Judge Rawlinson;
Concurrence by Judge Watford

## SUMMARY[*]

### Criminal/Immigration

The panel (1) amended its March 21, 2014, opinion affirming a criminal judgment in a case in which the defendant contended that his conviction for attempted reentry after a prior removal was predicated on a removal order that was obtained in violation of his due process rights; and (2) denied a petition for rehearing en banc on behalf of the court.

The panel amended the opinion to add a footnote limiting the effect of its holding and its discussion of rescission and termination of status to those admissions arising under the provisions for adjustment to lawful temporary resident status authorized by 8 U.S.C. § 1255a(a) and implemented at 8 C.F.R. § 245a.2.

The defendant's challenge centered on whether a non-citizen can be removed as an alien found in the United States without having been "admitted or paroled" under section 212(a)(6)(A)(i) of the Immigration and Nationality Act, where the alien adjusted to temporary resident status, but that status was later terminated. The panel held that termination of the defendant's temporary status operated to revoke any "admission" resulting from the prior adjustment of status, rendering the defendant unadmitted and removable. Because the defendant's removal order was not fundamentally unfair, the panel affirmed the district court's denial of his motion to dismiss the indictment.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel deemed waived on appeal the defendant's claim that the immigration judge failed to advise him of his right to counsel and/or obtain a valid waiver of the right to counsel.

The panel concluded that the fine imposed was reasonable.

Concurring, Judge Watford wrote that the panel need not say anything beyond that 8 C.F.R. § 245a.2(u)(4) states that termination of lawful temporary residence "shall act to return such alien to the unlawful status held prior to the adjustment," which in the defendant's case was that of an alien "present in the United States without being admitted or paroled."

## COUNSEL

Harini P. Raghupathi, Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Laura E. Duffy, Bruce R. Castetter, and Stephen P. Clark (argued), Office of the United States Attorney, San Diego, California, for Plaintiff-Appellee.

## ORDER

The opinion filed on March 21, 2014 is hereby amended as follows:

Following page 12, first full paragraph, the following footnote is appended:

[3]Our review in this case is confined to the operation of IRCA and its unique implementing regulations.  Our disposition of this case does not contradict *Hing Sum v. Holder*, 602 F.3d 1092 (9th Cir. 2010), which holds that the word "admission," either at the border or through adjustment of status or some other administrative process, generally refers to a procedural event rather than a substantive status. *Id*. at 1096; *see also id*. at 1099–1101 (tracing the evolution of the statutory definition of "admission").  Just as Congress had authority to adopt an admission-based removal system over an entry-based deportation system in the Illegal Immigration and Immigrant Responsibility Act of 1996, so too did it have the authority to dictate the specific contours of IRCA's temporary resident provisions, which include an adjustment of status process (and a regulatory definition of "admission") unknown elsewhere in immigration law. Accordingly, we limit the effect of our holding and our discussion of rescission and termination of status to those admissions arising under the provisions for adjustment to lawful temporary resident status authorized by 8 U.S.C. § 1255a(a) and implemented at 8 C.F.R. § 245a.2.

With this amendment, the panel votes to deny the Petition for Rehearing En Banc.

The full court has been advised of the Petition for Rehearing En Banc, and no judge of the court has requested a vote on it.

The Petition for Rehearing En Banc, filed on May 5, 2014, is **DENIED**.  No additional petitions for rehearing will be entertained.

**OPINION**

RAWLINSON, Circuit Judge:

Jose Luis Hernandez-Arias appeals the denial of his motion to dismiss the indictment charging him with attempted reentry after a prior removal in violation of 8 U.S.C. § 1326.  He argues that the conviction was predicated on a removal order that was obtained in violation of his due process rights.  Hernandez-Arias's challenge centers on whether a non-citizen can be removed as an alien found in the United States without having been "admitted or paroled" where the alien adjusted to temporary resident status, but that status was later terminated.  We conclude that termination of Hernandez-Arias's temporary status operated to revoke any "admission" resulting from the prior adjustment of status, rendering Hernandez-Arias unadmitted and removable.

## I.   Factual Background

Hernandez-Arias is a native and citizen of Mexico who entered the United States without inspection in 1981.  He is

the father of two United States citizen children. He has worked in an auto body shop and as a car salesman.

Hernandez-Arias was granted temporary resident status in 1988 following his application for amnesty pursuant to 8 U.S.C. § 1255a(a). This status was revoked in 1991 on account of his 1989 conviction of five counts of lewd and lascivious acts on a child under the age of 14 in violation of California Penal Code § 288(a)–(b). Hernandez-Arias was sentenced to six years in prison for each count, to be served concurrently.

Hernandez-Arias was paroled from prison in 1992. After a lengthy interlude, Hernandez-Arias again came to the attention of immigration authorities in October, 2010, after he was convicted of misdemeanor grand theft and sentenced to 120 days in jail. Hernandez-Arias was subsequently served with a Notice to Appear (NTA) charging removability for being "an alien present in the United States who has not been admitted or paroled," in violation of § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA).

Hernandez-Arias appeared *pro se* at a group removal hearing held on November 18, 2010. The immigration judge (IJ) informed the group of their "right to be represented by an attorney, but at no expense to the government." The IJ confirmed that each individual had received a list of immigration attorneys from the area and understood their responsibility to contact such attorneys should they desire further assistance. The group collectively waived the right to counsel. The IJ also informed the group of potential eligibility for certain forms of relief from deportation, including asylum, Convention Against Torture (CAT) protection, cancellation of removal, adjustment of status, and

voluntary departure. He did not specifically mention the potential for relief under § 212(h) of the INA (waiver of inadmissibility).

During the individual component of the hearing, the IJ found Hernandez-Arias deportable as charged based on his illegal entry in 1982[1]. The IJ then sought to ascertain Hernandez-Arias's potential eligibility for relief. Hernandez-Arias stated that his wife had filed an application for adjustment of status on his behalf in 2001, but that they "never received anything from that." He noted that he had been convicted of child molestation in 1988 and had two U.S. citizen children.

The IJ advised Hernandez-Arias of his uncertainty regarding whether Hernandez-Arias "would be eligible for a waiver or not," but that he might be able to apply for a "green card" if his wife had applied for adjustment before "April 30 of 2001." The IJ also noted that Hernandez-Arias might qualify for cancellation of removal, but that such relief was doubtful given his criminal history. In any case, the IJ explained that Hernandez-Arias bore the burden of proving eligibility for relief. When asked whether he wished to take some time to prepare his case, Hernandez-Arias declined and said that he did not wish to pursue any relief. The IJ accordingly ordered Hernandez-Arias removed to Mexico. Hernandez-Arias accepted the decision and waived his right to appeal. He was deported on November 20, 2010.

Not even three weeks later, on December 9, 2010, Hernandez-Arias applied for entry into the United States at

---

[1] It appears that the IJ intended to refer to 1981 rather than 1982. That discrepancy is not an issue on appeal.

the San Ysidro Port of Entry using a fraudulent passport and visa. Post-arrest, Hernandez-Arias admitted to immigration agents that he had previously been deported and lacked lawful status.

The government filed a three-count indictment against Hernandez-Arias, charging: (1) attempted reentry after a prior deportation in violation of 8 U.S.C. § 1326, (2) fraud and misuse of reentry documents in violation of 18 U.S.C. § 1546(a), and (3) aggravated identity theft in violation of 18 U.S.C. § 1028A. Hernandez-Arias moved to dismiss the § 1326 charge for alleged defects in his underlying removal. He argued that he was not removable as charged because he had been "admitted" within the meaning of the immigration statutes when he was granted temporary resident status. Hernandez-Arias also contended that his removal hearing was fundamentally unfair because the IJ had not advised him of his potential eligibility for § 212(h) relief. The government opposed the motion, arguing that Hernandez-Arias's removal comported with due process and that Hernandez-Arias had failed to exhaust available administrative remedies.

The district court denied Hernandez-Arias's motion to dismiss. It concluded that Hernandez-Arias was properly removed under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien who had not been admitted, because adjustment to temporary resident status was not an "admission" within the meaning of the immigration provisions. Alternatively, the court held that even if Hernandez-Arias had been admitted as a temporary resident, the termination of his temporary residency operated to return him to his prior unadmitted status pursuant to 8 C.F.R. § 245a.2(u)(4). The court further held that Hernandez-Arias was not prejudiced by the IJ's failure to advise him of the availability of prospective relief under

§ 212(h) because Hernandez-Arias was statutorily ineligible for that relief.  As Hernandez-Arias failed to demonstrate a due process violation resulting in prejudice, the court declined to reach the issue of administrative exhaustion.

A jury convicted Hernandez-Arias of illegal reentry and fraudulent use of reentry documents, but acquitted him of the aggravated identity theft charge.  The district court imposed a within-Guidelines sentence of 41 months' imprisonment. The court noted that the Guidelines range for the fine was $7,500 to $75,000 for each count, but recognized that Hernandez-Arias did not have "the ability to pay that kind of fine."  Accordingly, the judge ordered payment of a $1,000 fine in installments.  The fine amount and payment plan mirrored the recommendation in the Presentence Report, which provided no details regarding Hernandez-Arias's ability to pay.  Hernandez-Arias objected to the procedural and substantive reasonableness of his sentence, without specifically mentioning his fine.  Judgment was entered, and Hernandez-Arias filed a timely notice of appeal.

## II.  Standard of Review

We review *de novo* "the district court's denial of a motion to dismiss an indictment under 8 U.S.C. § 1326 when the motion is based on an alleged deprivation of due process in the underlying removal proceedings. . . ."  *United States v. Valdavinos-Torres*, 704 F.3d 679, 685 (9th Cir. 2012) (citation omitted).  When a party does not assert a specific objection in the district court, as is the case with respect to the imposition of the fine here, we review for plain error.  *See United States v. Santiago*, 466 F.3d 801, 803 (9th Cir. 2006). "A district court's finding of whether a defendant is able to

pay [a] fine is reviewed for clear error. . . ." *United States v. Orlando*, 553 F.3d 1235, 1240 (9th Cir. 2009).

### III.   Analysis

### A.  Collateral Challenge to Removal Order

An alien who "has been denied admission, excluded, deported, or removed" commits a crime if the alien "enters, attempts to enter, or is at any time found in, the United States."  8 U.S.C. § 1326(a).  One method of violating § 1326 is returning to the United States after entry of a prior removal order.  *See id*. § 1326(a)(1); *see also United States v. Vidal-Mendoza*, 705 F.3d 1012, 1014–15 (9th Cir. 2013). "Congress has strictly limited an alien's ability to bring a collateral challenge to such an order. . . ." *Vidal-Mendoza*, 705 F.3d at 1014–15 (citation omitted).  An alien facing criminal charges may initiate a collateral attack on the underlying order only if "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair."  8 U.S.C. § 1326(d).

If the alien establishes a due process violation that prevented his waiver of appeal from being knowing and intelligent, he is excused from the exhaustion requirement. *See United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004).  Therefore, the crucial question in this case is whether Hernandez-Arias has demonstrated a due process violation and fundamental unfairness.    Fundamental unfairness "for purposes of § 1326(d)(3) [is demonstrated] when the deportation proceeding violated the alien's due

process rights and the alien suffered prejudice as a result." *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1043 (9th Cir.), *cert. denied*, 133 S. Ct. 322 (2012) (citation omitted). Hernandez-Arias alleges three distinct due process violations in his removal proceeding:  (1) that he was not removable as charged because he was "admitted" within the meaning of immigration law when he was granted temporary resident status; (2) that he was not informed of his potential eligibility for a § 212(h) waiver; and (3) that he was not adequately advised of his right to counsel.  He contends that he suffered prejudice from these violations because he was removed when he should not have been or, alternatively, was removed despite the availability of viable avenues for relief.  None of Hernandez-Arias's arguments is persuasive.

*1) Hernandez-Arias was removable as charged.*

The government alleged in the NTA that Hernandez-Arias was removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) for being "[a]n alien present in the United States without being admitted or paroled . . ."  Hernandez-Arias was granted temporary resident status in 1988 pursuant to the amnesty provisions of the Immigration Reform and Control Act of 1986 (IRCA) (codified at 8 U.S.C. § 1255a).[2]  IRCA created a one-year window between 1987 and 1988 in which aliens who unlawfully entered the United States before January 1, 1982, could obtain Lawful Permanent Resident (LPR) status. *See* 8 U.S.C. § 1255a(a)–(b).   A two-step process was involved.  First, an alien was required to apply for temporary residence. *See id*. § 1255a(a).  Next, the temporary resident had to file an application for adjustment to LPR status within

---

[2] References to 8 U.S.C. § 1255A will be cited as § 1255a to be consistent with citations in online reference sources.

forty-three months after adjustment of status to that of a temporary resident. *See id*. § 1255a(b). Hernandez-Arias completed the first step, but not the second.

The INA defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id*. § 1101(a)(13)(A). This definition applies across the INA. *See id*. § 1101(a) (defining terms "[a]s used in this chapter"). "[T]he plain meaning of the term 'admission' in § 1101(a)(13)(A) . . . refers to a procedurally regular admission and not a substantively lawful admission." *Hing Sum v. Holder*, 602 F.3d 1092, 1096 (9th Cir. 2010) (footnote reference omitted). Thus, an alien is "admitted" pursuant to § 1101(a)(13)(A) when he undergoes the process of "inspection and authorization by an immigration officer at the port of entry", *id.* at 1101, regardless of whether the alien initially entered lawfully. *See id*. at 1099.

Because Hernandez-Arias was never inspected at the border, he was not "admitted" as that term is defined in § 1101(a)(13)(A). However, "both this court and the BIA, in precedential decisions, have not limited the scope of 'admitted' to [§ 1101(a)(13)(A)'s] strict definition." *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1015 (9th Cir. 2006). Certain events, such as adjustment to LPR status or acceptance into the Family Unity Program (FUP), qualify as "admission" for immigration purposes. *See id.* at 1018–19 (recognizing alien as "admitted in any status" upon acceptance into the FUP); *see also Ocampo-Duran v. Ashcroft*, 254 F.3d 1133, 1134–35 (9th Cir. 2001) (classifying alien who entered without inspection as admitted upon adjustment to LPR status). The BIA considers "[a]djustment of status [as] essentially a proxy for inspection and

permission to enter at the border, which is given as a matter of administrative grace. . . .[The BIA has] consistently construed an adjustment of status as an 'admission. . . .'" *In re Koljenovic*, 25 I & N Dec. 219, 221 (BIA 2010). According to the BIA, "adjustment applicants are to be treated as if they are being 'admitted.'. . ." *Id*.; *see also In re Alyazji*, 25 I & N Dec. 397, 404 (BIA 2011) (declining the invitation from the Department of Homeland Security to redefine the term "'admission' on a case-by-case basis" and concluding that "adjustment of status constitutes an admission").

It could be persuasively argued that admission to temporary residency qualifies as an "admission." The relevant statutory text includes the word "admitted," providing that "[t]he Attorney General shall *adjust the status* of an alien to that of an alien lawfully *admitted* for temporary residence [if the applicant fulfills certain requirements]." 8 U.S.C. § 1255a(a) (emphasis added). And, as with lawful admission for permanent residence, lawful admission for temporary residence involves the statutory fiction of an administrative "inspection" by immigration officials coupled with legal permission to remain in the United States. *See Koljenovic*, 25 I & N Dec. at 221. Our logic in *Ocampo-Duran* also suggests that the grant of lawful temporary resident status should constitute an admission. *See Ocampo-Duran*, 254 F.3d at 1135 (equating the privilege of lawfully residing in the country with an admission); *see also Lawrence v. Holder*, 717 F.3d 1036, 1040 (9th Cir. 2013) (deferring to the Attorney General's interpretation of INA § 212(c) defining "admissions" as encompassing applications for § 212(c) relief). Without deciding the issue, we assume that adjustment to temporary resident status pursuant to § 1255a(a) is an "admission" under the immigration laws.

We need not definitively resolve whether Hernandez-Arias's adjustment to temporary resident status constituted an admission because, even if it did, termination of that status operated to revoke any prior admission. Hernandez-Arias's 1989 convictions rendered him statutorily ineligible for further participation in the amnesty program, and his temporary resident status was terminated by the Immigration and Naturalization Service. *See* 8 C.F.R. §§ 245a.2(c), (k)(3), & (u)(1). Pursuant to 8 C.F.R. § 245a.2(u)(4), "[t]ermination of the status of any alien previously adjusted to lawful temporary residence under section 245a(a) of the Act shall act to return such alien to the unlawful status held prior to the adjustment, and render him or her amenable to exclusion or deportation proceedings under section 236 or 242 of the Act, as appropriate." Once Hernandez-Arias's temporary resident status was terminated, by operation of the governing regulation, he automatically reverted to his prior unlawful, *unadmitted* status.[3]

---

[3] Our review in this case is confined to the operation of IRCA and its unique implementing regulations. Our disposition of this case does not contradict *Hing Sum v. Holder*, 602 F.3d 1092 (9th Cir. 2010), which holds that the word "admission," either at the border or through adjustment of status or some other administrative process, generally refers to a procedural event rather than a substantive status. *Id*. at 1096; *see also id*. at 1099–1101 (tracing the evolution of the statutory definition of "admission"). Just as Congress had authority to adopt an admission-based removal system over an entry-based deportation system in the Illegal Immigration and Immigrant Responsibility Act of 1996, so too did it have the authority to dictate the specific contours of IRCA's temporary resident provisions, which include an adjustment of status process (and a regulatory definition of "admission") unknown elsewhere in immigration law. Accordingly, we limit the effect of our holding and our discussion of rescission and termination of status to those admissions arising under the provisions for adjustment to lawful temporary resident status authorized by 8 U.S.C. § 1255a(a) and implemented at 8 C.F.R. § 245a.2.

Hernandez-Arias's contention that he retained the benefits of his adjustment to temporary residence despite termination of that status lacks textual support in the applicable regulation. Were his "admission" to remain in effect despite termination of his status, Hernandez-Arias would not in fact "*return . . .* to the *unlawful* status held *prior* to the adjustment." 8 C.F.R § 245a.2(u)(4) (emphasis added). The regulation also specifies that termination of status rendered Hernandez-Arias subject to removal under sections 236 (exclusion) or 242 (deportation) of the INA. *See id.*

Fairly read, 8 C.F.R. § 245a.2 describes a limited form of status with no lasting immigration benefit. The regulation specifically provides that "[a]n alien whose status is adjusted to that of a lawful temporary resident under section 245a[4] of the Act is not entitled to . . . any . . . benefit or consideration accorded under the Act to aliens lawfully admitted for permanent residence." 8 C.F.R. § 245a.2(v). To the extent that "admission" is a lasting immigration benefit conferred upon LPRs, *see Ocampo Duran*, 254 F.3d at 1134–35, similar treatment of temporary residents is foreclosed under the governing regulation.

Hernandez-Arias contends that terminating his admission would effect a "rescission of status" in violation of 8 C.F.R. § 245a.2(u)(3), which provides that "the phrase termination of status of an alien granted lawful temporary residence under section 245a(a) of the Act shall not be construed to necessitate a rescission of status as described in section 246

---

[4] References to section 245a of the Act are to the statutory provisions codified at 8 U.S.C. § 1255a. *See* 8 C.F.R. § 245a.2 (Headings).

of the Act,[**5**] and the proceedings required by the regulations issued thereunder shall not apply." However, we do not view termination in this context to be analogous to rescission. The difference between rescission and termination is one of timing, similar to the difference between annulment and divorce. The legal effect of an annulment is to return the parties to the status of individuals who were never married to each other. *See Purganan v. Schweiker*, 665 F.2d 269, 270 (9th Cir. 1982) (noting that generally annulment relates back and "erase[s] the marriage and all its implications from the outset"). A consequence of annulment is that none of the benefits accumulated during the marriage is retained. *See id*. In contrast, a divorce severs the marital union as of the date the divorce becomes final. *See* Steve Escalera, *California Marital Annulments*, 11 J. CONTEMP. LEGAL ISSUES 153, 153–54 (1997) ("Whereas a divorce judgment dissolves an existing marriage—according full legal recognition to the marriage relationship between the date of its formation and the date of termination of the marital status—an annulment judgment is said to 'relate back' and erase the marriage and all its implications from the outset."). Any benefits accrued during the duration of the marriage continue to exist after divorce. *See, e.g.*, Cal. Fam. Code § 760 (noting that property acquired during the marriage is thereafter considered community property).

Termination of Hernandez-Arias's temporary resident status is more akin to a divorce than to an annulment. The government is not seeking to deprive Hernandez-Arias of any benefits he may have accrued while residing in the United

---

[**5**] References to section 246 of the Act are to the statutory provisions codified at 8 U.S.C. § 1256. *See* 8 U.S.C. § 1256 (discussing rescission of adjustment of status).

States. For example, if Hernandez-Arias were eligible for cancellation of removal, he would be entitled to count all the time he was present as a temporary resident toward the physical presence requirement. *See* 8 U.S.C. § 1229b (discussing the physical presence requirement for inadmissible or deportable aliens). That would not be true if Hernandez-Arias's status had been rescinded. *See Kim v. Meese*, 810 F.2d 1494, 1497 (9th Cir. 1987) (noting that rescission of status is appropriate when the alien was never eligible for the adjustment granted); *see also* 8 C.F.R. § 246.1 (describing rescission procedure). Indeed, it is telling that the immigration authorities have never contended that Hernandez-Arias was ineligible for adjustment of status to that of a temporary resident.

We need not and do not defer to the BIA's unpublished, one-judge decision in *In re Castro-Valdez*, 2012 WL 391158 (BIA 2012), finding "admitted" an alien whose adjustment of status had been terminated. A one-member, non-precedential order like this one is not entitled to deference under *Auer v. Robbins*, 519 U.S. 452 (1997), as an interpretation of an agency regulation, because it does not reflect the BIA's considered judgment on the question. *See Go v. Holder*, No. 11-73272, __F.3d__ n.1 (9th Cir. 2014) (citing *Lezama-Garcia v. Holder*, 666 F.3d 518, 532 (9th Cir. 2011)). *In re Castro-Valdez* did not rely on any supporting authority in its analysis and its cursory review of the regulation lacks persuasive power.

For the reasons discussed, we conclude that Hernandez-Arias's removal as an alien "not admitted or paroled" as alleged in the NTA was not "fundamentally unfair." The termination of his temporary resident status returned him to the status of an inadmissible alien subject to removal.

*2) Hernandez-Arias was not eligible for a § 212(h) waiver*.[6]

When the record supports an inference that an alien in removal proceedings is eligible for relief from removal, the IJ must advise the alien of his eligibility for the potential relief. *See United States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1999), *as amended*. However, to establish fundamental unfairness for failure to advise of potential eligibility for relief, an alien must show prejudice in the form of "plausible grounds for relief from deportation. . . ." *Id*.

Hernandez-Arias is foreclosed from demonstrating prejudice because "INA § 212(h) does not provide relief for aliens removed for illegal presence in the United States without admission or parole in violation of 8 U.S.C. § 1182(a)(6)(A)(i)," the sole basis of Hernandez-Arias's removal. *United States v. Ramos*, 623 F.3d 672, 684 (9th Cir. 2010). For a § 212(h) waiver to be plausible, we would have to conclude that Hernandez-Arias was not removable as charged. *See id.* Because we have concluded that termination of Hernandez-Arias's temporary status returned him to the status of an inadmissible alien, Hernandez-Arias cannot demonstrate prejudice in the form of a plausible ground for available relief. *See Arce-Hernandez*, 163 F.3d at 563.

---

[6] References to § 212(h) are to 8 U.S.C. § 1182(h).

*3) Hernandez-Arias did not preserve his claim that the IJ failed to advise him of his right to counsel and/or obtain a valid waiver of the right to counsel.*

For the first time on appeal, Hernandez-Arias argues that his removal was fundamentally unfair because the IJ did not individually advise him of his right to counsel or obtain a valid waiver of the right to counsel.

"[A]n issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it. . . ." *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1322 (9th Cir. 2012) (citation omitted). In the district court proceedings Hernandez-Arias sought dismissal of the indictment solely on the ground that his temporary admission precluded his removal. He never raised any challenge predicated on the IJ's alleged failure to properly advise him of his right to counsel. We therefore consider this issue waived on appeal.

*4) Conclusion.*

Because we conclude that Hernandez-Arias has not demonstrated any due process violation resulting in prejudice, his order of removal was not "fundamentally unfair." *Reyes-Bonilla*, 671 F.3d at 1043. Failure to prove "fundamental unfairness" precludes a successful collateral attack on the underlying removal order pursuant to § 1326(d). *Id.*; *see also United States v. Calderon-Segura*, 512 F.3d 1104, 1108 (9th Cir. 2008) (holding that the district court properly denied a motion to dismiss an indictment because the prior removal was not "fundamentally unfair" under § 1326(d)(3)). We affirm the district court's denial of Hernandez-Arias's motion to dismiss the indictment.

**B.  Reasonableness of the Fine**

Hernandez-Arias argues that the district court's imposition of a below-Guidelines fine of $1,000 was procedurally erroneous due to an inadequate explanation. Hernandez-Arias did not raise this specific objection before the district court, and the record does not reflect an understanding by the district court that Hernandez-Arias's general objection to his sentence covered the fine, *see United States v. Grissom*, 525 F.3d 691, 695 (9th Cir. 2008), so we review for plain error.  *See Santiago*, 466 F.3d at 803.  But even if the error were preserved and we were to review for reasonableness, *see Orlando*, 553 F.3d at 1240, we would reach the same conclusion.

Under the Guidelines, a district court must impose a fine "in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a).  "The district court must consult the Guidelines' recommendation, the § 3553(a) factors, and the 18 U.S.C. § 3572(a) factors to determine the appropriateness of the imposition of a fine and its amount. . . ." *Orlando*, 553 F.3d at 1239 (citation omitted). Although a district court must "explain the sentence" sufficiently to permit meaningful review, an "[a]dequate explanation not only derives from the judge's pronouncement of the sentence, but may also be inferred from the [presentence report] or the record as a whole." *United States v. Blinkinsop*, 606 F.3d 1110, 1114 (9th Cir. 2010) (citation, alteration, and internal quotation marks omitted).

The district court noted at the sentencing hearing that the Guidelines range for the fine was between $7,500 and $75,000 for each count, but that Hernandez-Arias did not

have "the ability to pay that kind of fine." Accordingly, the judge imposed a $1,000 fine. Although the judge did not explain at length his fine calculation, the amount imposed mirrored the recommendation in the presentence report and Hernandez-Arias voiced no objection. "At sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact[.]" Fed. R. Crim. P. 32(i)(3)(A). Evidence in the record of Hernandez-Arias's skill as an auto mechanic and car salesman supported an inference that he had the ability to pay the fine amount. Given the lack of a showing of inability to pay the amount, the imposition of a $1,000 fine was reasonably supported by facts in the record. No further explanation was required. *See Orlando*, 553 F.3d at 1240 (upholding the imposition of a fine without requiring extensive explanation).

## IV.     Summary

The district court properly denied Hernandez-Arias's motion to dismiss the indictment charging him with attempted reentry after a prior removal in violation of 8 U.S.C. § 1326. The removal order under which Hernandez-Arias was deported was obtained in a manner that was consistent with Hernandez-Arias's due process rights. Hernandez-Arias was removable as an alien present in the country without admission. Once Hernandez-Arias's temporary status was terminated, his status reverted to that of an unadmitted alien subject to removal. The fine imposed by the district court was reasonable.

**AFFIRMED.**

WATFORD, Circuit Judge, concurring:

I agree that Hernandez-Arias was properly removed in 2010 as "[a]n alien present in the United States without being admitted or paroled." 8 U.S.C. § 1182(a)(6)(A)(i). The statutory phrase "present in the United States without being admitted or paroled" describes a status, one that Hernandez-Arias held after entering the country without inspection. Even if Hernandez-Arias lost that status when he obtained lawful temporary residence, he regained that status when his lawful temporary residence was terminated. If there were any doubt on that score, the governing regulation resolves it. The regulation states that termination of lawful temporary residence "shall act to return such alien to the unlawful status held prior to the adjustment," 8 C.F.R. § 245a.2(u)(4), which in Hernandez-Arias' case was that of an alien "present in the United States without being admitted or paroled." I don't think we need to say anything beyond that to resolve this issue.

I join the court's opinion with respect to all other issues.