**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-50322 |
| Plaintiff - Appellee, | D.C. No. 08-CR-4571-WQH |
| v. | |
| RUBEN ALCAZAR-BUSTOS, | MEMORANDUM [*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted April 6, 2010
Pasadena, California

Before: D.W. NELSON and REINHARDT, Circuit Judges, and GERTNER, [**]
District Judge.

Appellant Ruben Alcazar-Bustos ("Alcazar") entered a conditional guilty

plea to an indictment charging him with illegal reentry by a deported alien, in

violation of 8 U.S.C. § 1326. He had previously moved to dismiss the indictment

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**] The Honorable Nancy Gertner, United States District Judge for the
District of Massachusetts, sitting by designation.

claiming a due process violation in the underlying removal proceeding. The government conceded that the immigration judge ("IJ") wrongly told Alcazar that he was ineligible for pre-conclusion voluntary departure, a form of relief from deportation. *See* 8 U.S.C. §1229c(a). Nevertheless, the government argued, and the district court agreed, that the motion to dismiss should be denied on the ground that Alcazar did not suffer prejudice from the IJ's error. We hold that it is plausible that the IJ would have exercised discretion to grant voluntary departure and thus we reverse the district court.

## I.  Background

Alcazar was born in Mexico on May 14, 1987, but he has lived in the United States since he was two months old. He is married to a U.S. citizen; they have a child who is also a citizen. Alcazar had some trouble with the law when he was a teenager, but unlike the district court, we do not consider his criminal history to be "significant and lengthy." *United States v. Alcazar-Bustos*, No. 08cr4571WQH, 2009 WL 1033785, at *3 (S.D. Cal. Apr. 16, 2009). Prior to the present illegal reentry charge, Alcazar had three juvenile adjudications and, while still in his teens, two convictions for firearm possession that resulted in prison terms.

After Alcazar was released, Immigration and Customs Enforcement ("ICE") sought to remove him from the country. At Alcazar's deportation hearing, the IJ

ruled that Alcazar was removable because he had not been properly admitted and inspected by immigration officers. 8 U.S.C. § 1182(a)(6)(A)(i). The IJ also stated that because one of Alcazar's firearm convictions was an aggravated felony, he was not eligible for pre-conclusion voluntary departure. *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1229c(a)(1). Alcazar waived his right to appeal, and ICE removed Alcazar to Mexico. Soon after removal, border patrol agents found Alcazar within the United States again, which led to an indictment for this offense.

Alcazar moved to dismiss the indictment on due process grounds. He argued that: (1) the IJ had violated his due process rights by wrongly concluding he was ineligible for relief; (2) his decision to waive appeal was not "considered and intelligent"; and (3) he was prejudiced by the IJ's errors. *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir. 2004); *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048-50 (9th Cir. 2004). Ultimately, the district court denied the motion, holding that Alcazar suffered no prejudice because voluntary departure was not plausible under the circumstances of the case. *See Ubaldo-Figueroa*, 364 F.3d at 1050. [1]

---

[1] In this appeal, the government does not dispute that the removal hearing violated Alcazar's due process rights and that his appeal waiver was invalid, which leaves only the issue of whether he was prejudiced by the violations. As described above, prejudice to Alcazar depends upon whether there was a "plausible" basis for voluntary departure relief.

## II.     Discussion

An IJ has discretion to grant pre-conclusion voluntary departure to aliens who are statutorily eligible.  *See In re Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (B.I.A. 1999).  The IJ may consider

> the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident. . . . [as well as] compensating elements such as long residence here, close family ties in the United States, or humanitarian needs.

*Id.*  An IJ has "broader authority to grant" pre-conclusion voluntary departure than some other forms of immigration relief.  *Id.*  On collateral attack, a court reviewing a removal order must determine whether the defendant has a "'plausible' ground for relief."  *Ubaldo-Figueroa*, 364 F.3d at 1050 (quoting *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000)).  On the one hand, a defendant does not need to show that he "would have been granted relief" if his hearing had been error-free. *Id.*  On the other hand, a showing of the mere existence of factors favoring relief from deportation does not definitively establish that relief is plausible.  *See, e.g.*, *United States v. Muro-Inclan*, 249 F.3d 1180, 1186 (9th Cir. 2001).  In effect, removable aliens seeking voluntary departure fall on a continuum between those who have no criminal record at all and significant positive ties to the United States,

and those who have serious records and no countervailing equities.  For individuals between these extremes, the question of plausibility requires a closer examination of the facts and a comparison with similar cases.

Alcazar's case contains equities that weigh both for and against immigration relief.  Two factors in his background, his near-lifetime residence in this country and his family members' citizenship, plainly favor pre-conclusion voluntary departure.  *See Arguelles-Campos*, 22 I. & N. Dec. at 817.  At the same time, his convictions, associations with gang members, prior drug use, and sporadic work history militate against this relief.  *Id.*; *Matter of Roberts*, 20 I. & N. Dec. 294, 302 (B.I.A. 1991). [2]

The equities in Alcazar's case are comparable to other cases in which we have found prejudice arising from due process errors.  In analogous cases, we have reversed illegal reentry convictions after finding plausible grounds for types of relief from deportation more substantial than voluntary departure.  In *Arrieta*, we concluded that an individual who had previously been convicted of attempted rape but had family ties in the United States plausibly could have been granted waiver of deportation under 8 U.S.C. § 1182(h).  224 F.3d at 1078, 1082-83.  Although the

_____

[2] Another factor cited by the district court, lack of military service, is irrelevant for individuals who have never had legal residence in the United States. Generally, only citizens and lawfully admitted permanent residents are eligible to join the U.S. armed forces.  *See* 10 U.S.C. § 504(b)(1).

defendant in that case also provided important financial and practical support for his family, our analysis of that factor must be understood in the light of the requirements for the requested form of relief: the "extreme hardship" showing required for a deportation waiver at issue in *Arrieta* is more difficult to meet than the standard for voluntary departure. *Id.* at 1080, 1082.

Similarly, we have held that a lawful permanent resident with a criminal record and a wife and children who were U.S. citizens plausibly could have received a discretionary waiver of deportation under former 8 U.S.C. § 1182(c). *Ubaldo-Figueroa*, 364 F.3d at 1050-51. While the defendant in that case had a less significant record and a more active role in supporting his family than Alcazar, *id.* at 1045-46, 1051, as in *Arrieta*, the relief he was seeking was far more substantial than the relief sought in the case at bar. [3]

Other cases with similar equities that did not find prejudice are distinguishable because, as in the cases described above, they involved a form of relief that has more stringent requirements than voluntary departure. In *Muro-*

---

[3] In another case, we suggested that factors similar to those here – such as a long period living in the United States, marriage to a lawful resident, and reentry in order to live with family – favored cancellation of removal under 8 U.S.C. § 1229b and remanded to the district court for this determination. *United States v. Pallares-Galan*, 359 F.3d 1088, 1092, 1104 (9th Cir. 2004). Again, the more compelling positive equities in that case, including a steady work history and family support, *id.* at 1104, were undoubtedly important to the plausibility determination, but only because the defendant sought a more significant form of relief.

*Inclan*, for example, we held that waiver of deportation under 8 U.S.C. § 1182(h) was not plausible for an individual who came to the United States as an infant, had been deported on five occasions, and had a wife and children who were U.S. citizens. 249 F.3d at 1182, 1186. Similarly, in *United States v. Arce-Hernandez* we ruled that an appellant with a prior conviction for carrying a loaded firearm had not made a plausible case for a § 1182(h) deportation waiver despite citizen family members and a sick wife. 163 F.3d 559, 564 (9th Cir. 1998). Our comments in these cases have to be viewed through the lens of the relief sought. That the facts showed only the "common" or "typical" results of deportation was significant solely because waiver of deportation requires "extreme hardship." *Muro-Inclan*, 249 F.3d at 1184, 1186; *Arce-Hernandez*, 163 F.3d at 564. In contrast, pre-conclusion voluntary departure very well may be plausible even in a typical, run of the mill, case.[4]

---

[4]. We have issued a number of unpublished memorandum dispositions holding that voluntary departure is plausible in such cases. *See, e.g. United States v. Vasallo-Martinez*, No. 09-50324, 2009 WL 5103029, at *1-2 (9th Cir. Dec. 21, 2009) (unpublished) (holding that it was plausible that an individual with seven convictions would be granted voluntary departure in part because he, like Alcazar, had lived in the United States since he was a child and had a wife and child who were U.S. citizens); *United States v. Basulto-Pulido*, 219 F. App'x 717, 719 & n.1 (9th Cir. 2007) (unpublished) (holding that near-lifetime residence in this country and family members' citizenship plainly favor pre-conclusion voluntary departure). *But see United States v. Alonza-Mendoza*, 239 F. App'x 330, 332 (9th Cir. 2007) (unpublished) (holding that an alien whose positive equities were similar to Alcazar's did not suffer prejudice from an IJ's failure to mention eligibility for pre-

## III.    Conclusion

In sum, we hold that it is plausible that an IJ would have granted Alcazar pre-conclusion voluntary departure, and that Alcazar was therefore prejudiced by the IJ's conclusion that he was statutorily ineligible for this relief.  The conviction is **REVERSED**.

---

conclusion voluntary departure).