**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

ANTONIO MELENDEZ-CASTRO, AKA
Antonio Melendres-Castro,
          *Defendant-Appellant.*

No. 10-50620

D.C. No.
3:10-CR-02444-
LAB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted
December 7, 2011—Pasadena, California

Filed January 18, 2012

Before: Dorothy W. Nelson, Ronald M. Gould, and
Sandra S. Ikuta, Circuit Judges.

Per Curiam Opinion

## COUNSEL

Amy B. Kapoor, Federal Defenders of San Diego, Inc., for the defendant-appellant.

Laura E. Duffy, United States Attorney, Bruce R. Castetter, Assistant U.S. Attorney Chief, Appellate Section Criminal Division, Randy K. Jones, Assistant U.S. Attorney, for the plaintiff-appellee.

**OPINION**

PER CURIAM:

Defendant Antonio Melendez-Castro appeals his conviction under 8 U.S.C. § 1326(b) for illegal reentry into the United States after being deported. Melendez-Castro challenges his conviction based on a collateral attack of the underlying removal order. We hold that a defect in Melendez-Castro's 1997 immigration proceedings, that he was not meaningfully informed of his eligibility for voluntary departure, violated his due process rights. However, the district court did not consider fully whether Melendez-Castro suffered prejudice. We therefore remand for the district court to address this issue in the first instance.

**I**

Melendez-Castro is a native and citizen of Mexico who became a legal permanent resident of the United States in 1988. For close to twenty years, Melendez-Castro lived in Stockton, California, where he supported himself and his family by working as a plumber, electrician, mechanic, and assistant in his father's tire shop. While his father is deceased, his mother and sister reside legally in the Central Valley of California, and his U.S.-citizen daughter lives in Texas.

On November 5, 1997, the Immigration and Naturalization Service ("INS") served Melendez-Castro with a Notice to Appear ("NTA"), alleging that he was subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) for having been convicted of two crimes involving moral turpitude, namely, petty theft and petty theft with a prior.[1]

---

[1] The first petty theft for which he was charged involved stealing three pairs of boxer shorts valued at six dollars.

On November 25, 1997, Melendez-Castro appeared pro se for a group deportation hearing. The immigration judge ("IJ") determined that Melendez-Castro was deportable as charged. The IJ then discussed whether Melendez-Castro was statutorily eligible to apply for cancellation of removal. The IJ explained at length the legal requirements of cancellation of removal, why Melendez-Castro likely qualified, the process of applying for this relief, and the time it would take to do so. Melendez-Castro decided not to apply.

Subsequently, the IJ summarily discussed voluntary departure:

> The only other application you may be eligible for is something called voluntary departure. Voluntary departure is available to anyone who has not been convicted of an aggravated felony. I can deny this in my discretion and, and [*sic*] even if you were to apply for voluntary departure I wouldn't grant it to you. I don't grant voluntary departure to anyone convicted of a crime in the United States, so I will be denying any other case of voluntary departure that you may make, but I need to go through that in the records, so that you understand.

Upon further questioning by the IJ, Melendez-Castro stated that he understood the IJ's decision. At the close of the immigration proceedings, the IJ signed an order removing Melendez-Castro to Mexico. Melendez-Castro did not appeal and was deported that day.

After this deportation, Melendez-Castro returned to the United States. On June 23, 2010, he was indicted for one count of illegal reentry after deportation, in violation of 8 U.S.C. § 1326. On August 25, 2010, he filed a motion to dismiss the indictment, arguing that the illegal reentry charge was based on an invalid deportation. The district court denied the motion, and a jury convicted him of illegal reentry after

deportation in violation of 8 U.S.C. § 1326(b). The district court sentenced Melendez-Castro to 33 months in custody. He filed a timely notice of appeal.

## II

We have jurisdiction under 28 U.S.C. § 1291. We review a collateral attack to a deportation order de novo. *United States v. Lopez-Velasquez*, 629 F.3d 894, 896-97 (2010) (en banc).

## III

**[1]** A defendant charged with illegal reentry pursuant to 8 U.S.C. § 1326 has a due process right to bring a collateral attack challenging the validity of his underlying deportation order because it serves as a predicate element of his conviction. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004). To succeed on a collateral attack under 8 U.S.C. § 1326(d), a defendant must demonstrate: "(1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued 'improperly deprived [him] of the opportunity for judicial review' and (3) that 'the entry of the order was fundamentally unfair.' " *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1203-04 (9th Cir. 2004) (per curiam) (quoting 8 U.S.C. § 1326(d)). "An underlying removal order is 'fundamentally unfair' if: (1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Ubaldo-Figueroa*, 364 F.3d at 1048 (citation and quotations omitted).

**[2]** The Due Process Clause of the Fifth Amendment requires that an alien in immigration proceedings be "made aware that he has a right to seek relief" so that he has "a meaningful opportunity to appeal the fact that he was not advised of that right." *United States v. Arrieta*, 224 F.3d 1076,

1079 (9th Cir. 2000) ("[W]here the record contains an inference that the petitioner is eligible for relief from deportation, the IJ must advise the alien of this possibility and give him the opportunity to develop the issue.") (internal quotations and citation omitted). This includes providing an alien with the opportunity to apply for relief. *See id.* An alien applying for such relief has a right to present evidence in support of the claim. *See* 8 U.S.C. § 1229a(b)(4)(B); 8 C.F.R. § 1240.1(c); 8 C.F.R. § 1240.11(a)(2).

**[3]** Upon review of the record, we conclude that Melendez-Castro was not meaningfully advised of his right to seek voluntary departure. Although the IJ at first told Melendez-Castro that he was eligible for voluntary departure, almost in the same breath the IJ told him that he would not get the relief if he applied for it because he had a criminal record. A reasonable person in Melendez-Castro's position would have been discouraged from applying for voluntary departure to an extent that it is as if he was told that he did not qualify for this relief. Melendez-Castro knew he had a criminal record, and heard the IJ state without qualification that he would not get this relief. It is no wonder that he did not formally apply. The IJ never asked Melendez-Castro whether he wanted to apply and, instead, said that any such application would be futile. As a result, Melendez-Castro never had a genuine opportunity to apply for voluntary departure or to present evidence of the factors favoring this relief. *See generally Campos-Granillo v. INS*, 12 F.3d 849, 852 n.8 (9th Cir. 1993).

**[4]** An alien is "barred under 8 U.S.C. § 1326(d) from collaterally attacking his underlying removal order . . . 'if he validly waived the right to appeal that order during the deportation proceedings.'" *Ubaldo-Figueroa*, 364 F.3d at 1048 (citing *United States v. Muro-Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001), *cert. denied*, 534 U.S. 879 (2001)). Melendez-Castro did not appeal the IJ's decision, and that presents a potential stumbling block to his collateral attack.

But because of the underlying defect in Melendez-Castro's deportation hearing identified above, we hold that his waiver of appeal was neither "considered" nor "intelligent," and it is therefore invalid. *Ubaldo-Figueroa*, 364 F.3d at 1049; *Arrieta*, 224 F.3d at 1079 (holding valid waiver must be "considered and intelligent"). As in *Arrieta,* "an alien who is not made aware that he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right." *Arrieta*, 224 F.3d at 1079. Consequently, Melendez-Castro is "exempted from the exhaustion bar." *Ubaldo-Figueroa*, 364 F.3d at 1049; *Muro-Inclan*, 249 F.3d at 1183 ("The exhaustion requirement of 8 U.S.C. § 1326(d) cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process."). Because Melendez-Castro's waiver was not valid, he was "deprived of his right to that appeal and thus to a meaningful opportunity for judicial review." *United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004) (citing *United States v. Leon-Paz*, 340 F.3d 1003, 1005 (9th Cir. 2003)).

**[5]** Nonetheless, to succeed on a collateral attack, Melendez-Castro must also show prejudice. Melendez-Castro "does not have to show that he actually would have been granted relief," *Ubaldo-Figueroa*, 364 F.3d at 1050, but "that he had a 'plausible' ground for relief from deportation." *Id.* at 1050 (citing *Arrieta*, 224 F.3d at 1079).

**[6]** Melendez-Castro met the statutory requirements for pre-conclusion voluntary departure. 8 U.S.C. § 1229c(a); 8 C.F.R § 1240.26(b). Although he had a criminal record starting with his petty theft of boxer shorts, he also had positive equities that could have been considered in deciding whether to grant him this relief, including his family ties and history of living and working in the United States. *See Campos-Granillo*, 12 F.3d at 852 n.8. Because the district court erroneously found no due process violation, it did not fully analyze the issue of prejudice, which must be shown for a successful

collateral attack. We remand to the district court for consideration of prejudice in the first instance, and the district court should set forth on the record the reasons for its ultimate decision.

**REMANDED.**