**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-50071 |
| Plaintiff - Appellee, | D.C. No. 3:09-cr-03328-DMS-1 |
| v. | |
| JOSE TRINIDAD RODRIGUEZ-ARROYO, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted January 11, 2012
Pasadena, California

Before: KOZINSKI, Chief Judge, REINHARDT and W. FLETCHER, Circuit
Judges.

Appellant Jose Trinidad Rodriguez-Arroyo ("Rodriguez"), a U.S. Marine

Corps veteran who served in Vietnam and was honorably discharged, was admitted

to the United States as a lawful permanent resident in 1973. He has two U.S.

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

citizen children and other U.S. citizen relatives. He appeals his conviction for attempted entry after deportation in violation of 8 U.S.C. § 1326. Rodriguez moved before the district court for dismissal of that count of his indictment, alleging that his deportations in 1998 and 2005 were invalid. *See* 8 U.S.C. § 1326(d). The government conceded error in the 1998 deportation. The district court determined that the 2005 deportation was valid and denied the motion.

Rodriguez alleges that he was deprived of due process in his 2005 deportation because he was not adequately informed of his right to apply for voluntary departure. "The requirement that the IJ inform an alien of his or her ability to apply for relief from removal is mandatory, and failure to so inform the alien of his or her eligibility for relief from removal is a denial of due process that invalidates the underlying deportation proceeding." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (internal quotation marks, alterations, and citation omitted). We have held that this specifically applies to voluntary departure, *see United States v. Arias-Ordonez*, 597 F.3d 972 (9th Cir. 2010); *United States v. Ortiz-Lopez*, 385 F.3d 1202 (9th Cir. 2004), and that the advice must be "meaningful[]," *see United States v. Melendez-Castro*, -- F.3d --, 2012 WL 130348, at *1 (9th Cir. Jan. 18, 2012).

Rodriguez was deprived of due process during the 2005 deportation hearing because, like the defendant in *Melendez-Castro*, he was advised of the availability of voluntary departure, but "was not meaningfully advised of his right to seek" such relief or to file an application seeking it. *Id.* The IJ's discussion of voluntary departure was ambiguous at best. He referred to it during the group hearing and told the aliens about some of its benefits, but he did not explain the circumstances under which such relief was available. The IJ simply told the group that in the afternoon, when he spoke with them individually, he would ask questions about their "equities" and that if the alien believed he should be granted voluntary departure, he should explain his "equities." At the very end of the group hearing, the IJ stated that he would go over each of the items in their charging documents "to determine whether there's any relief that [they] could apply for." But during his individual colloquy with Rodriguez, the IJ did not mention voluntary departure. Although he appeared to be sympathetic to Rodriguez and explored certain of his "equities," the IJ never asked whether Rodriguez would like to pursue this avenue of relief. Instead, the IJ signed an order for deportation in which he denied "Respondent's application for voluntary departure," an application that Rodriguez never made or was informed that he could make. While it is true that Rodriguez stated that he wished to be removed to Mexico because his father was "real sick"

3

and "doing pretty, pretty bad," he did not say that he was not willing to depart voluntarily immediately, nor is there any reason to think that he would not have done so had the IJ explained the voluntary removal process to him. In sum, Rodriguez "never had a genuine opportunity to apply for voluntary departure or to present evidence of the factors favoring this relief." *Melendez-Castro*, -- F.3d --, 2012 WL 130348, at *2. Consequently, Rodriguez was deprived of due process during the 2005 deportation hearing and his waiver of his right to appeal was not "considered and intelligent." *Ubaldo-Figueroa*, 364 F.3d at 1049.

A petitioner must show prejudice resulting from the due process violation in order to succeed on a motion to dismiss an indictment under 8 U.S.C. § 1326(d). *United States v. Muro-Inclan*, 249 F.3d 1180, 1184 (9th Cir. 2001). In order to establish prejudice, an alien does not have to show that he would actually have been granted relief. *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000). "Instead, he must only show that he had a 'plausible' ground for relief from deportation," *id.*, which Rodriguez did here. In any event, the government does not contest prejudice but conceded at oral argument that it did not raise that issue in its brief to this court. The government also conceded at oral argument that if a due process violation is found – and we so find – Rodriguez would satisfy the prejudice prong.

4

Accordingly, we reverse the district court's denial of the motion to dismiss the § 1326 count of the indictment and vacate Rodriguez's conviction under § 1326.[1]

**REVERSED.**

---

[1] Because we vacate Rodriguez's conviction on this ground, we do not reach any of his remaining challenges to the validity of the 2005 deportation.