**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

HUMBERTO GONZALEZ-FLORES,
*Defendant-Appellant*.

No. 14-50067

D.C. No.
3:13-cr-01809-BEN-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted
February 6, 2015—Pasadena, California

Filed June 8, 2015

Before: Michael J. Melloy,[*] Jay S. Bybee,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

---

[*] The Honorable Michael J. Melloy, Senior Circuit Judge for the U.S. Court of Appeals for the Eighth Circuit, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed the district court's denial of a motion to dismiss an information charging the defendant under 8 U.S.C. § 1326 with being an alien found in the United States after removal, in a case in which the defendant claimed that his 2004 removal order was invalid because the immigration judge violated his due process rights by failing to inform him that he might be eligible for voluntary departure.

The panel held that the defendant may not bring a collateral attack against the removal order because any error at the 2004 removal proceedings was not prejudicial. The panel explained that even if the IJ's detailed colloquy regarding the issue of the defendant's eligibility for voluntary departure fell short of the requirements of 8 C.F.R. § 1240.11(a)(2), the defendant failed to carry his burden of showing a grant of relief was plausible, where the defendant's positive equities were minimal, his negative equities were significant, and he failed to carry his burden of showing that aliens with his scant positive equities have received relief.

### COUNSEL

Michael A. Marks (argued), Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Scott T. Jones (argued), Assistant United States Attorney; Laura E. Duffy, United States Attorney; Bruce R. Castetter, Assistant United States Attorney, Chief, Appellate Section, Criminal Division, San Diego, California, for Plaintiff-Appellee.

**OPINION**

IKUTA, Circuit Judge:

Humberto Gonzalez-Flores appeals from the district court's denial of his motion to dismiss an information charging him under 8 U.S.C. § 1326 with being an alien found in the United States after he was removed in 2004. We affirm. Gonzalez-Flores may not bring a collateral attack against the removal order underlying his conviction because any error at the 2004 removal proceedings was not prejudicial. *See* 8 U.S.C. § 1326(d)(3); *United States v. Vidal-Mendoza*, 705 F.3d 1012, 1015–16 (9th Cir. 2013).

I

Gonzalez-Flores, a citizen of Mexico, entered the United States illegally in 1999. He was 15 years old at the time of entry. He began attending high school, but dropped out after the eleventh grade to start working. He worked for several years at Los Angeles International Airport loading food onto passenger planes. On November 4, 2004, he was convicted of robbery in violation of California Penal Code § 211[1] and

---

[1] Section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

was sentenced to 210 days in county jail.[2]  He had two prior
misdemeanor convictions: in 2004, he was convicted of
driving without a license, and in 2001, he was convicted of
loitering in a public park after hours.[3]

In November 2004, after his robbery conviction,
Gonzalez-Flores was placed in removal proceedings.  He
appeared pro se at a hearing before an immigration judge (IJ)
on December 29, 2004.  During the hearing, the IJ asked
Gonzalez-Flores a series of questions to draw out information
relating to his eligibility for immigration relief.  The IJ first
asked whether Gonzalez-Flores was married or had children,
and whether his parents were United States citizens or lawful
permanent residents.  Gonzalez-Flores answered "no" to these
questions.   The IJ then asked whether Gonzalez-Flores's
parents were born, lived in, and were citizens of Mexico.
Gonzalez-Flores answered "yes."   In response to further
questions, Gonzalez-Flores stated that no one had ever filed
a petition on his behalf so he could immigrate to the United
States, and that he was not a permanent resident of the United
States.  Gonzalez-Flores also agreed with the IJ's statement
that Gonzalez-Flores came into the United States for the first
time in 1999.  The IJ then confirmed that Gonzalez-Flores
had been convicted of robbery and sentenced to 210 days in
jail.

---

[2] The government asserts that the sentence was 240 days, but this factual
dispute does not affect our analysis.

[3] Gonzalez-Flores disputes that he was convicted of loitering in the park.
Because the district court did not resolve this dispute, we do not rely on
this misdemeanor conviction for our analysis.

After the IJ asked Gonzalez-Flores if there was any other information he wanted to tell the court and Gozalez-Flores said "no," the IJ explained his conclusion:

> Then, sir, then the court does find that you'll be removed from the United States to Mexico based on the charges contained in the notice to appear. He's not eligible for any relief or any other benefits under the immigration laws.
>
> Specifically, he's not eligible for cancellation of removal because he does not have the requisite ten years residence or the family ties to be eligible for that form of relief.
>
> He's not eligible for adjustment of status because no petition has been filed on his behalf to allow him to adjust status.
>
> And as for voluntary departure, I'm not [going to] grant that form of relief. The respondent's been convicted of a crime of violence as well as a crime of theft: robbery. I'm [going to] find that negative . . . that negative aspect is enough to overcome the, um, positive aspects that the respondent has in this case, which are very few except for those normally associated with any residence of any duration. So I'm not [going to] grant voluntary departure as a matter of discretion.
>
> As for any claim to citizenship, he indicated his parents were born in Mexico, live in Mexico, and are citizens of Mexico, as were

> his grandparents. So he does not derive any benefits through his family, and he has no fear of persecution or torture if he goes back to Mexico.
>
> So there being no other relief available to him, it is the order of the court that he be removed from the United States to Mexico based on the charges contained in the notice to appear.

In response to further questions, Gonzalez-Flores stated he understood and accepted the IJ's decision, and did not wish to appeal it. Accordingly, the IJ ordered him removed.

Following his removal in 2004, Gonzalez-Flores illegally reentered the United States in 2008. The government reinstated his removal order, and removed him again on February 29, 2008. In April 2013, he made a third illegal entry and was arrested near the border between Mexico and the United States. The government charged him with being an alien found in the United States after removal, in violation of 8 U.S.C. § 1326. He moved to dismiss the information under § 1326(d), claiming his 2004 removal order was invalid because the IJ had violated his due process rights by failing to inform him that he might be eligible for voluntary departure. The district court denied the motion on the ground that no due process violation occurred, and even if there had been such a violation, Gonzalez-Flores suffered no prejudice. Gonzalez-Flores later pleaded guilty to the § 1326 violation in a plea agreement. The plea agreement included an appeal waiver, but Gonzalez-Flores retained the right to bring this appeal of the district court's denial of his motion to dismiss the information. We have jurisdiction over his appeal under 28 U.S.C. § 1291.

II

We review de novo a district court's denial of an alien's collateral challenge to a prior deportation order under 8 U.S.C. § 1326(d). *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1053 (9th Cir. 2003).

As originally enacted, § 1326 did not permit collateral attacks on a prior order of deportation. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837 (1987). In response to the Supreme Court's determination that imposition of criminal penalties based on a prior administrative proceeding violated due process unless there was "*some* meaningful review of the administrative proceeding," *id.* at 837–38, Congress added § 1326(d), *see United States v. Arias-Ordonez*, 597 F.3d 972, 976 (9th Cir. 2010). As required by *Mendoza-Lopez*, this section gives a defendant the opportunity to challenge the validity of a prior deportation order in a criminal proceeding arising under § 1326. An alien bringing such a collateral attack is required to prove that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d).

In applying § 1326(d), our cases generally focus on a single type of defect in a deportation hearing: the IJ's failure to comply with 8 C.F.R. § 1240.11(a)(2). *See, e.g.*, *Vidal-Mendoza*, 705 F.3d at 1015. Under § 1240.11(a)(2), if an alien seeking lawful permanent resident status applies to the IJ for a waiver of a ground of inadmissibility, the IJ "shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford

the alien an opportunity to make application during the hearing." 8 C.F.R. § 1240.11(a)(2).**⁴**  We deem the IJ to have breached its obligation to inform an alien of "apparent eligibility" when the IJ either fails to give the alien any information about the existence of relief for which the alien is "apparently eligible," *see United States v. Lopez-Velasquez*, 629 F.3d 894, 901 (9th Cir. 2010) (en banc); *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir. 2004); *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000), or when the IJ erroneously tells the alien that no relief is possible, *see Arias-Ordonez*, 597 F.3d at 977; *see also United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006); *United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004); *United States v. Leon-Paz*, 340 F.3d 1003, 1005 (9th Cir. 2003).   An IJ may also breach this regulatory obligation by stating that the alien is eligible for relief, but immediately negating that statement so that "it is as if he was told that he did not qualify for this relief," which puts the alien in the same position as one who is never "made aware that he has a right to seek relief."  *United States v. Melendez-*

---

**⁴** 8 CFR § 1240.11.(a)(2) provides:

> 2) In conjunction with any application for creation of status of an alien lawfully admitted for permanent residence made to an immigration judge, if the alien is inadmissible under any provision of section 212(a) of the Act, and believes that he or she meets the eligibility requirements for a waiver of the ground of inadmissibility, he or she may apply to the immigration judge for such waiver.  The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing, in accordance with the provisions of § 1240.8(d).

*Castro*, 671 F.3d 950, 954 (9th Cir. 2012) (per curiam) (quoting *Arrieta*, 224 F.3d at 1079). Because an alien is entitled to the procedure set forth in 8 C.F.R. § 1240.11(a)(2) (as we have construed it), we have concluded that an IJ's failure to comply with this procedure violates the alien's right to procedural due process. *See United States v. Muro–Inclan*, 249 F.3d 1180, 1183–84 (9th Cir. 2001).

For purposes of § 1326(d), the IJ's non-compliance with § 1240.11(a)(2) relieves the alien of the burden of proving exhaustion of administrative remedies under § 1326(d)(1) because "we deem the alien's waiver of the right to an administrative appeal to have been insufficiently considered and intelligent." *Vidal-Mendoza*, 705 F.3d at 1015 (internal quotation marks omitted). The IJ's regulatory error also proves that the alien was improperly deprived of the opportunity for judicial review pursuant to § 1326(d)(2), because "an alien who is not made aware that he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right." *Arrieta*, 224 F.3d at 1079. Finally, if the IJ's error was prejudicial to the alien, then the alien can establish that the removal order "was fundamentally unfair" for purposes of 8 U.S.C. § 1326(d)(3). *Vidal-Mendoza*, 705 F.3d at 1016. To prove prejudice, an alien seeking a discretionary form of relief must make a "plausible showing" that an IJ presented with all of the facts would exercise discretion in the alien's favor. *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263–64 (9th Cir. 2013). "[T]he defendant bears the burden of proving prejudice under § 1326(d)(3)." *United States v. Valdez-Novoa*, 780 F.3d 906, 916–17 (9th Cir. 2015).

We employ a two-step process for determining whether an alien claiming apparent eligibility for voluntary departure

has made this showing. *Rojas-Pedroza*, 716 F.3d at 1263. First, we consider the positive and negative factors an IJ would consider relevant to an exercise of discretion. *See id.* at 1264–65. Positive factors include "long residence, close family ties to the United States, and humanitarian needs." *Id.* at 1265. Negative factors include "the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and any other evidence of bad character or the undesirability of the applicant as a permanent resident." *Id.* (quoting *Matter of Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (BIA 1999)).

Second, we determine whether, in light of these factors and the circumstances of the alien's case, the alien carried the burden of proving "it was plausible (not merely conceivable) that the IJ would have exercised his discretion in the alien's favor." *Id.* at 1263 (internal quotation marks omitted). "[E]stablishing 'plausibility' requires more than establishing a mere 'possibility.'" *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011). In assessing whether the alien carried this burden, we "focus on whether aliens with similar circumstances received relief." *Rojas-Pedroza*, 716 F.3d at 1263. "[T]he existence of a single case that is arguably on point means only that it is 'possible' or 'conceivable' that a similarly situated alien would be afforded voluntary departure. That is plainly insufficient . . . ." *Valdez-Novoa*, 780 F.3d at 920–21.

III

We now turn to the facts of this case, and consider whether Gonzalez-Flores can bring a collateral attack on his prior deportation order under § 1326(d). Gonzalez-Flores

claims that he satisfies the three requirements for bringing such a collateral attack because the IJ failed to inform him of his "apparent eligibility to apply for" voluntary departure. *See* 8 C.F.R. § 1240.11(a)(2).

As a threshold matter, the record makes clear (and Gonzalez-Flores does not dispute) that the IJ in this case *did* raise the issue of Gonzalez-Flores's eligibility for voluntary departure. Accordingly, Gonzalez-Flores relies on *Melendez-Castro*, and argues that the IJ told him about the availability of voluntary departure only to tell him he did not qualify "almost in the same breath." *See* 671 F.3d at 954.

We disagree. In *Melendez-Castro*, the IJ stated:

> The only other application you may be eligible for is something called voluntary departure. Voluntary departure is available to anyone who has not been convicted of an aggravated felony. I can deny this in my discretion and, *and [sic ] even if you were to apply for voluntary departure I wouldn't grant it to you*. I don't grant voluntary departure to anyone convicted of a crime in the United States, so I will be denying any other case of voluntary departure that you may make, but I need to go through that in the records, so that you understand.

671 F.3d at 953 (emphasis added). *Melendez-Castro* explained that this statement failed to meet the requirements of 8 C.F.R. § 1240.11(a)(2) because the IJ stated that the alien was eligible for relief, but "almost in the same breath" stated the alien would not get the relief if he applied for it, and "[a]

reasonable person in Melendez–Castro's position would have been discouraged from applying for voluntary departure *to an extent that it is as if he was told that he did not qualify* for this relief." *Id.* at 954 (emphasis added). We concluded that such a complete and immediate negation violated the alien's procedural right to be informed of his apparent eligibility to apply for relief under § 1240.11(a)(2). *Id.*

Unlike in *Melendez-Castro*, the IJ here did not state an unqualified rule that an alien in Gonzalez-Flores's situation could not qualify for relief. *See id*. Nor did the IJ raise and then immediately negate "almost in the same breath" the possibility of voluntary departure. *See id*. Rather, the IJ raised the availability of such relief and explored it. In effect, the IJ deemed Gonzalez-Flores to have applied for voluntary departure, weighed Gonzalez-Flores's equities, and reached a conclusion on his application.[5]

But even if the IJ's detailed colloquy with Gonzalez-Flores fell short of the requirements of § 1240.11(a)(2), Gonzalez-Flores suffered no prejudice from any such error, and therefore cannot demonstrate that the entry of the removal order was "fundamentally unfair" for purposes of § 1326(d)(3). *See Rojas-Pedroza*, 716 F.3d at 1266–67. Applying our two-part test for prejudice, we first consider the positive and negative factors that are relevant to the IJ's

---

[5] Gonzalez-Flores also argues he was not given an opportunity to "develop the issue" or "present evidence in support of the claim." He does not explain, however, how the IJ's failure to give him such an opportunity demonstrates that Gonzalez-Flores has met the requirements of § 1326(d), and can therefore challenge the validity of the removal order. Because Gonzalez-Flores has not "specifically and distinctly argued" this matter in his appeal, we decline to reach this issue. *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986).

exercise of discretion.  Here, Gonzalez-Flores's positive equities are minimal: he lived in the United States for five years, he attended high school from age 15 through the eleventh grade, and he held a job for a few years from when he left high school until he committed a robbery.  Although the IJ was not informed of Gonzalez-Flores's high school attendance and work history, these additional facts do not contradict the IJ's conclusion that Gonzalez-Flores's equities were "very few except for those normally associated with any residence of any duration."  Because none of Gonzalez-Flores's family members were United States citizens or lawful permanent residents, and because he resided in the United States for only five years, he lacked close family ties to the United States or a long residence here, the most typical favorable equities deemed important in other cases.  *See Arguelles-Campos*, 22 I. & N. Dec. at 817.  On the other hand, his negative equities are significant.  He was convicted of robbery, which the IJ described as "a crime of violence as well as a crime of theft," for which he was sentenced to 210 days in jail, plus probation.  He was also convicted of a prior misdemeanor.

Second, we consider whether Gonzalez-Flores has carried his burden of showing that "aliens with similar circumstances received relief."  *See Rojas-Pedroza*, 716 F.3d at 1263.  The Ninth Circuit cases identified by Gonzalez-Flores involve aliens who had far more significant positive equities, even though they also had more significant negative equities.  Gonzalez-Flores has pointed to no case in which an alien with so few positive equities has been granted relief.  In *United States v. Alcazar-Bustos*, we held that it was plausible a defendant would be granted voluntary departure where the defendant had lived in the United States since he was two months old and had a United States citizen wife and child,

even though the defendant's criminal history included firearm possession convictions, and showed association with gang members and prior drug use. 382 F. App'x 568, 569–71 (9th Cir. 2010). Likewise, in *United States v. Vasallo-Martinez*, we held it was plausible a defendant would be granted voluntary departure where the defendant resided in the United States for 21 years, had a United States citizen wife and child, and owned a business, because these positive equities outweighed the defendant's four convictions for driving under the influence and three unrelated misdemeanors. 360 F. App'x 731, 732–33 (9th Cir. 2009).

Gonzalez-Flores has also identified opinions in which the BIA held that an alien was entitled to voluntary departure, but each of those cases similarly involved aliens with significant positive equities. In *Matter of Gonzales-Figeroa*, the BIA upheld a grant of voluntary departure where the alien had lived in the United States for fifteen years, had a pending visa petition filed by his lawful permanent resident mother, and his sister and two nieces were United States citizens. 2006 WL 729784, at *1–2 (BIA Feb. 10, 2006). Although the alien in that case had four assault convictions and a conviction for resisting arrest, the BIA credited the alien's testimony that the convictions were the result of a drinking problem, and that he no longer drank after successfully completing a rehabilitation program. *Id*. at *1. Similarly, in *Matter of Hernandez-Garcia*, the BIA reversed a denial of voluntary departure where the alien had a United States citizen wife and child, even though the alien had impersonated a United States citizen in order to procure a passport. 2012 WL 1705671, at *1 (BIA Apr. 11, 2012); *see also Matter of Pineda-Castellanos*, 2005 WL 3833024, at *1–2 (BIA Nov. 16, 2005) (affirming an IJ's grant of voluntary departure to an alien with a lawful permanent resident wife and three children, but

indicating that such relief was barely warranted given the negative equities of six criminal convictions). By contrast, the BIA affirmed a denial of voluntary departure where the alien was arrested twice for driving on a suspended license and once for a DUI, despite the alien's family ties to the United States. *Matter of Posadas-Posadas*, 2012 WL 371659, at \*1–2 (BIA Jan. 18, 2012).

As these cases illustrate, Gonzalez-Flores has failed to carry his burden of showing that aliens with his scant positive equities received relief. *See Rojas-Pedroza*, 716 F.3d at 1263. In fact, Gonzalez-Flores has failed to identify even a single case on point, which in any event would be insufficient on its own. *See Valdez-Novoa*, 780 F.3d at 920–21.

Because Gonzalez-Flores has failed to carry his burden of showing a grant of relief was "plausible," he has not demonstrated that any error on the part of the IJ in informing him of the availability of voluntary departure prejudiced him. *See id*. at 921. A removal order is "fundamentally unfair" for purposes of § 1326(d)(3) only if the alien "suffered prejudice as a result of the defects" in the deportation proceeding, *United States v. Ubaldo–Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (internal quotation marks omitted), and therefore Gonzalez-Flores has not demonstrated that he satisfied this requirement. Because Gonzalez-Flores has not met all of the requirements of § 1326(d), he may not collaterally attack his deportation order.

**AFFIRMED**.