**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FILED

SEP 26 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-10295 |
| Plaintiff-Appellee, | D.C. No. 4:14-cr-01883-RCC-BGM-1 |
| v. | |
| GUILLERMO ORTEGA, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, Chief Judge, Presiding

Argued and Submitted September 6, 2018
San Francisco, California

Before: BERZON and FRIEDLAND, Circuit Judges, and CARDONE,** District
Judge.

Appellant Guillermo Ortega appeals from the denial of his motion to dismiss

his indictment pursuant to 8 U.S.C. § 1326(d). He argues that his April 23, 2001

removal order cannot support his conviction for illegal reentry in violation of 8

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Kathleen Cardone, United States District Judge for the
Western District of Texas, sitting by designation.

U.S.C. § 1326(a), because he was prejudiced by the immigration judge's ("IJ") failure to inform him of his eligibility for pre-conclusion voluntary departure, a form of immigration relief. We conclude that it is plausible Ortega would have been granted pre-conclusion voluntary departure, and we therefore reverse his conviction.

On May 28, 2015, Ortega was convicted of illegal reentry in violation of 8 U.S.C. § 1326(a). In a previous decision, we held that defects in Ortega's 2001 removal proceedings and removal order, which serve as the predicate to his conviction, violated his due process rights because the IJ failed to inform Ortega of his possible eligibility for certain forms of immigration relief. *United States v. Ortega*, 675 F. App'x 687, 688 (9th Cir. 2017). As a result, we held, Ortega satisfied each prong necessary to challenge the removal order underlying his illegal reentry conviction except the prejudice prong. *Id.* We remanded to the district court to determine whether Ortega suffered prejudice as a result of the defects in his removal proceedings. On remand, the district court held that Ortega was not prejudiced by the IJ's failure to inform him of pre-conclusion voluntary departure, because it was not plausible that he would have been granted such relief.

To demonstrate that Ortega was prejudiced by the IJ's failure to inform him of pre-conclusion voluntary departure, he must show that it is "plausible" an IJ would have granted him such relief at the time of his removal hearing in 2001. *See*

*United States v. Raya-Vaca*, 771 F.3d 1195, 1207 (9th Cir. 2014). "Plausible" connotes a degree of probability between "possible" and "probable." *See id*; *United States v. Cisneros-Rodriguez*, 813 F.3d 748, 761 (9th Cir. 2015). The burden is not a heavy one—a defendant "need only establish 'some evidentiary basis on which relief could have been granted.'" *Raya-Vaca*, 771 F.3d at 1207 (quoting *United States v. Reyes–Bonilla*, 671 F.3d 1036, 1049-50 (9th Cir. 2012)). We engage in an objective, fact-specific inquiry and may conclude that relief is plausible if "[individuals] with similar circumstances received relief." *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013).

An IJ has discretion to grant pre-conclusion voluntary departure after considering a noncitizen's positive and negative equities. These equities include:

> [T]he nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident. . . . [as well as] compensating elements such as long residence here, close family ties in the United States, or humanitarian needs.

*Matter of Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (B.I.A.1999).

On the one hand, in 2001, Ortega had lived in the United States for twenty-two nearly continuous years. He had maintained employment since 1992 and "worked hard to" support his wife and two U.S. citizen children, born in 1997 and 2000. On the other hand, Ortega was separated from his wife, and had numerous misdemeanor convictions, including for theft, property destruction, driving under

3

the influence, fourth degree assault, and three violations of protective orders relating to his wife. He also had a single felony conviction for bail jumping. No conviction resulted in a sentence of more than 120 days' jail, and Ortega had served no time in prison.

While Ortega's criminal history in 2001 was not insignificant, his equities are comparable to those of noncitizens in other cases in which we have found prejudice arising from a failure to inform an individual of pre-conclusion voluntary departure. For example, *United States v. Alcazar-Bustos*, 382 F. App'x 568 (9th Cir. 2010), held that pre-conclusion voluntary departure was plausible for an individual with a criminal history more serious than Ortega's. Alcazar-Bustos possessed juvenile adjudications for burglary, battery, and vehicular theft, as well as two adult felony convictions for possession of firearms. *United States v. Alcazar-Bustos*, No. 08-cr-4571-WQH, 2009 WL 1033785, at *3 (S.D. Cal. Apr. 16, 2009), *reversed by Alcazar-Bustos*, 382 F. App'x at 569-71. He also had "associations with gang members, prior drug use, and [a] sporadic work history." *Alcazar-Bustos*, 382 F. App'x at 570. Nonetheless, we held that "his near-lifetime residence in this country and his family members' citizenship" was enough to establish that voluntary departure was a plausible form of relief. *Id*. Ortega's single non-violent felony conviction and similar positive equities indicate that voluntary departure is also plausible for him.

4

Similarly, *United States v. Basulto-Pulido*, 219 F. App'x 717 (9th Cir. 2007), held that pre-conclusion voluntary departure was plausible for an individual who possessed multiple convictions including "corporal injury to a spouse or cohabitant, driving with a suspended or revoked license, theft and resisting arrest." Brief for Appellee United States at 7, *United States v. Basulto-Pulido*, 219 F. App'x 717 (9th Cir. 2007) (No. 05-50972). In contrast, Ortega's convictions for violating protective orders did not require the government to prove that he had used force or violence against his spouse.

Moreover, the BIA has also upheld IJ decisions to grant pre-conclusion voluntary departure to individuals whose equities were similar to, or less favorable than, Ortega's. *See, e.g.*, *Matter of Gonzales–Figeroa*, A29013696, 2006 WL 729784 (B.I.A. Feb. 10, 2006) (affirming grant of voluntary departure where individual had four convictions for assault, one conviction for resisting arrest, and numerous other arrests); *Matter of Pineda–Castellanos*, A77212443, 2005 WL 3833024 (B.I.A. Nov. 16, 2005) (affirming grant of voluntary departure where individual's criminal history included six criminal convictions including battery, drunkenness, and driving under the influence).[1]

---

[1] Relief is not plausible *only because* an IJ could have granted such relief without abusing her discretion. *United States v. Valdez-Novoa*, 780 F.3d 906, 914-15 (9th Cir. 2015). But BIA decisions holding that IJs acted within their discretion to grant relief can still serve as persuasive evidence of the

Because we hold that it is plausible that an IJ would have granted Ortega pre-conclusion voluntary departure, and Ortega was therefore prejudiced by the IJ's failure to inform him of such relief, we do not reach Ortega's other arguments.

The conviction is **REVERSED**.

---

plausibility of relief. *See id.* at 918-21 (examining BIA decisions affirming grants and denials of voluntary departure and concluding that such relief was not plausible for the defendant in that case).