**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-50145 |
| Plaintiff-Appellee, | D.C. No. 3:18-cr-03681-WQH-1 |
| v. | |
| JUAN TINOCO-GARCIA, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted August 31, 2020
Pasadena, California

Before: SILER,[**] BERZON, and LEE, Circuit Judges.

Memorandum joined by Judge SILER and Judge LEE;
Dissent by Judge BERZON

After the defendant-appellant Juan Tinoco-Garcia was criminally charged

with illegal re-entry into the United States, he moved to collaterally attack his prior

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Eugene E. Siler, United States Circuit Judge for the

removal order for lack of due process. We review the district court's denial of his motion to dismiss de novo. *See United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004). We affirm because the Immigration Judge ("IJ") sufficiently advised Tinoco-Garcia about his apparent eligibility for relief and provided him with an opportunity to consult with counsel, which he declined.[1]

"A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Id.* at 1047-48 (*citing United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987)). To sustain such a collateral attack, "a defendant must, within constitutional limitations, demonstrate (1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair." *Id*. at 1048 (*citing* 8 U.S.C. § 1326(d)). "An underlying removal order is 'fundamentally unfair' if: '(1) [a defendant's] due process rights were violated by defects in his underlying

---

U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[1] Tinoco-Garcia also challenges the validity of his notice to appear under 8 U.S.C. § 1229(a) and 8 C.F.R. §§ 1003.12-15. As Tinoco-Garcia recognizes, *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), and *Aguilar Fermin v. Barr*, 958 F.3d 887 (9th Cir. 2020), require that we reject the challenge, which Tinoco-Garcia preserved for en banc or Supreme Court review.

2

deportation proceeding, and (2) he suffered prejudice as a result of the defects.'" *Id.* (*citing United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998)). The exhaustion requirement "cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process." *Id.* (*quoting United States v. Muro-Inclan*, 249 F.3d 1180, 1183-84 (9th Cir. 2001)). Finally, "[t]he Due Process Clause of the Fifth Amendment requires that an alien in immigration proceedings be 'made aware that he has a right to seek relief.'" *United States v. Melendez-Castro*, 671 F.3d 950, 954 (9th Cir. 2012) (*citing United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000)); *see also* 8 C.F.R. § 1240.11(a)(2).

In his motion to dismiss the information, Tinoco-Garcia alleged that his prior removal proceedings violated due process because the IJ failed sufficiently to advise him about his apparent eligibility for relief and that he suffered prejudice as a result. At the time of his prior removal hearing, Tinoco-Garcia was ineligible for voluntary departure because he had pled nolo contendre to an aggravated felony. *See* Cal. Penal Code § 288(a); 8 U.S.C. § 1229c(b)(1); *id.* at § 1101(f)(8). Tinoco-Garcia, however, argues that he may have become eligible for relief if he was able to vacate his aggravated felony conviction, under *Padilla v. Kentucky*, 559 U.S. 356 (2010), because his criminal defense attorney had provided

objectively unreasonable advice about the immigration consequences of his plea, but the IJ failed adequately to so advise him.

Assuming without deciding that the IJ had a duty to advise Tinoco-Garcia about his potential *Padilla* route to vacating his conviction in state court, we agree with the district court that the IJ "properly advised [Tinoco-Garcia] of the potential avenue for post-conviction relief and offered to set the hearing over to allow the Defendant to seek counsel." After Tinoco-Garcia explained the circumstances of his initial plea to the IJ, the IJ recognized that Tinoco-Garcia may have a *Padilla* claim. The IJ explained that "I understand what you're telling me and you may very well have a motion that you can bring in the California criminal court system regarding your plea." The IJ also offered that "I can set your hearing over another couple of weeks, if you want to talk to an attorney about representing you … in immigration court."

The IJ did not negate this advice by adding that "it's very unlikely that you're going to have enough time, while you're in custody, to challenge your criminal court conviction." This comment was a prediction as to the speed with which another adjudicatory body would act, not a negation of the *Padilla* advice given. It was therefore quite different from the comment in *Melendez-Castro*, where the IJ negated the advice given about eligibility for voluntary departure by

4

adding, definitively, that "even if you were to apply for voluntary departure *I wouldn't grant it to you.*" 671 F.3d at 953 (emphasis added).

Additionally, the record shows that Tinoco-Garcia repeatedly stated that he preferred a quick deportation as opposed to continuing to sit in detention, which he would be required do while seeking a state court *Padilla* ruling and then an alternative disposition of the state charges against him, whether by plea to revised charges or trial. The IJ's comment about timing was therefore responsive to Tinoco-Garcia's expressed concerns about remaining in custody.

We therefore **AFFIRM** the district court's denial of Tinoco-Garcia's motion to dismiss and judgment.

*United States of America v. Juan Tinoco-Garcia*, No. 19-50145

BERZON, Circuit Judge, dissenting:

I respectfully dissent. I would hold that the IJ's advice about the possibility of vacating the state conviction under *Padilla v. Kentucky*, 559 U.S. 356 (2010), was critically incomplete. At the time she gave the advice, the IJ was misinformed about the relationship between Tinoco-Garcia's *Padilla* claim and his eligibility for voluntary departure, and so gave materially misleading information.

When the IJ briefly advised Tinoco-Garcia that he had a possible *Padilla* ineffective assistance of counsel claim in state court, she did not explain how a successful *Padilla* claim would allow Tinoco-Garcia to become eligible for certain discretionary relief, such as voluntary departure. When the IJ advised Tinoco-Garcia about his *Padilla* claim, the IJ by her own admission "wasn't thinking particularly clearly." At the time, the IJ was under the incorrect impression that Tinoco-Garcia was eligible for voluntary departure, regardless of the outcome of a *Padilla* claim, because his conviction was for less than one year. In fact, Tinoco-Garcia's conviction for sexual abuse of a minor is always an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(A). So the IJ did not explain that absent a successful *Padilla* claim in state court, Tinoco-Garcia would not be eligible for voluntary departure and would be barred for life from returning to the United States absent a very-difficult-to-obtain additional waiver. That information

would have been central to Tinoco-Garcia's decision whether to confer with a lawyer or contest his deportation, as he stated repeatedly that he wanted to return to Mexico quickly so he could work, earn money, hire a lawyer, and apply from Mexico for adjustment of status.

During the subsequent voluntary departure hearing, the IJ told Tinoco-Garcia that "because you have an aggravated felony conviction, you are *not eligible* for voluntary departure. I apologize if I suggested otherwise." (Emphasis added). But the IJ did not connect that correction to her earlier discouraging comments about the possibility of voiding the state aggravated felony conviction.

Further, the IJ's statement to Tinoco-Garcia that "it's very unlikely that you're going to have enough time, while you're in custody, to challenge your criminal court conviction," did, in my view, negate what advice she did offer. The statement could have reasonably been understood as advising Tinoco-Garcia that his *Padilla* claim would be futile because the IJ would not exercise her discretion to grant the continuances necessary for Tinoco-Garcia to pursue his state court claim. *See generally Matter of L-A-B-R-*, 27 I. & N. Dec. 405, 419 (2018) ("[A]n immigration judge must assess whether good cause supports a continuance to accommodate a collateral proceeding by considering primarily the likelihood that

2

the collateral relief will be granted and will materially affect the outcome of the removal proceedings.")

As a result of these errors, I would not conclude, as the majority does, that the IJ sufficiently advised Tinoco-Garcia about his eligibility for relief and that Tinoco-Garcia preferred a quick deportation to continuing in detention. Instead, I would hold that Tinoco-Garcia's prior removal proceedings violated due process because he was not informed that failing to obtain *Padilla* relief would eliminate his eligibility for voluntary departure and thereby severely affect his eventual ability to return to the United States.

Further, I would also conclude that Tinoco-Garcia suffered prejudice as a result. There was a "reasonable possibility" that Tinoco-Garcia would have been able to vacate his state conviction and become eligible for relief. *See C.J.L.G. v. Barr*, 923 F.3d 622, 627 (9th Cir. 2019) (en banc) (internal quotation omitted). In the district court, Tinoco-Garcia's uncontested expert witness filed a declaration explaining that "[t]here are alternative factually appropriate California convictions that would not have constituted aggravated felonies and would have permitted the same sentence." The expert also stated that Tinoco-Garcia's criminal defense attorney told her that he did not know what the term "aggravated felony" meant, never mind advise Tinoco-Garcia about the immigration consequences of such a conviction.

3

For the above reasons, I would reverse the judgment of the district court, and so dissent.